YOST, Appellee,

v.

UNANUE, Appellant.

[Cite as *Yost v. Unanue* (1996), 109 Ohio App.3d 294.]

Court of Appeals of Ohio,
Fifth District, Stark County.

1995CA00138.

Decided Feb. 12, 1996.

*Buckingham, Doolittle & Burroughs* and *William W. Emley, Sr.,* for appellee.

*George H. Trifelos* and *James Silvio Manello,* for appellant.

JOHN W. WISE, Judge.

Appellee Theresa Yost originally filed this action in December 1984, alleging that appellant Ernesto Unanue was the biological father of her minor daughter, born on May 4, 1983. Appellant originally denied paternity. However, after the HLA blood test results were received, appellant stipulated to paternity.

The trial court conducted hearings to determine the amount of child support to be paid by appellant. On October 15, 1985, the referee issued an entry ordering appellant to pay $350 per month for support. The referee also ordered appellant to pay three percent of any monies received by appellant upon the exercise of stock options the year the options are exercised. This matter was appealed, and we affirmed the trial court's order in *Yost v. Unanue* (Dec. 15, 1986), Stark App. No. CA–6928, unreported, 1986 WL 14705.

In October 1987, appellee filed a motion to increase the support obligation under the new child support guidelines. Pursuant to the new guidelines, appellant's obligation was increased to $880 per month. However, the prior order regarding the three-percent payment of stock options was dismissed. Neither party appealed.

Appellee filed her motion to modify, which is the subject matter of this appeal, on January 4, 1994. Appellee sought an increase in child support based upon appellant's receipt of $164,273 following the exercise of a stock option in 1993. Appellant filed a motion for reallocation of parental rights, motion for visitation, motion to establish a trust, motion for IRS dependency exemptions and reallocation of health care obligations. Appellee subsequently filed a motion to compel and motion in contempt. The only motions that were actually pursued by the parties were the motions concerning child support, income tax dependency allocation and health care expenses.

Following a hearing conducted in August 1994, the referee issued his report. Pursuant to the report, appellant's child support obligation was increased to $1,365.67 per month, retroactive to January 4, 1994, the date appellee filed her motion for modification. Appellant was ordered to provide health care coverage for the minor child if it is available to him at a reasonable cost, and appellant was awarded the dependency exemption.

The trial court adopted the referee's report, except for one modification, on September 28, 1994. Appellant's child support obligation was reduced from $1,365.67 per month to $1,250 per month based upon tax consequences not considered by the referee. Appellant filed a request for leave to file a motion for a new trial instanter on November 14, 1994 and a motion for reconsideration on December 28, 1994. Both motions were overruled by the trial court on March 15,

1995. Appellant timely filed his notice of appeal and sets forth the following assignments of error:

"I. The trial court abused its discretion and erred as a matter of law by including a nonrecurring capital gain as income especially where the capital gain was contemplated at the time of the original child support order and its last modification.

"II. The trial court abused its discretion and erred as a matter of law by increasing Mr. Unanue's child support obligation in the absence of evidence that the present order was inadequate to meet the child's needs and/or where the evidence establishes that the purported substantial change in circumstances was considered at the time of the original order's issuance.

"III. The trial court abused its discretion and erred as a matter of law by making the child support order retroactive to the date the motion to modify was filed when substantial delay was caused by the malfeasance or nonfeasance of Ms. Yost.

"IV. The trial court abused its discretion and erred as a matter of law in ordering Mr. Unanue to provide health insurance for the child without first determining that coverage is available at a more reasonable cost to Mr. Unanue."

I

█ Appellant maintains in his first assignment of error that the trial court abused its discretion and erred as a matter of law when it included the capital gain generated from the sale of a stock option by appellant for purposes of determining his child support obligation because the capital gain is not recurring income. We sustain this assignment of error for the reasons that follow.

R.C. 3113.215(A)(11) defines "nonrecurring income" as "any income or cash flow item that the parent receives in any year or for any number of years not to exceed three years and that the parent does not expect to continue to receive on a regular basis. 'Nonrecurring or unsustainable income or cash flow item' does not include a lottery prize award that is not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise utilizes to produce income or cash flow for a period of more than three years."

Upon review of the record, we find that the money received by appellant in 1993 following the exercise of his stock option qualifies as "nonrecurring income." First, there is no evidence that the stock option was exercised each year for a period of more than three years which would require the trial court in calculating child support to include this as income. From the record, it appears that

appellant has exercised his stock option on only two occasions. In 1984, appellant exercised stock options in the amount of $42,473.44. In 1993, appellant exercised stock options in the amount of $164,273.

Appellant acknowledged in an affidavit filed with the trial court on September 29, 1994, that the stock options exercised in 1993 were the accumulation of options granted to him since 1984. The fact that appellant accumulated these options over a period of time in excess of three years does not require us to treat the 1993 stock option as income. Appellant earned no income on these options until the market value of the stock, as listed on the New York Stock Exchange, exceeded the option price and appellant sold his shares. As long as the market value of the stock was below the option price, the stock option had no tangible value. Thus, it was not until appellant exercised his stock option in 1993, that he received any value for these accumulated shares of stock. Further, there was no evidence contained in the record that he would continue to receive income from these options in the future.

In addition to the stock option monies qualifying as "nonrecurring income," we find that the substantial change of circumstances was contemplated at the time the original order of child support was issued by the trial court on October 17, 1985. R.C. 3113.215(B)(4) requires that in addition to there being a substantial change of circumstances, the change must not have been contemplated when the original child support order or the last modification of child support was ordered by the trial court.

In the case *sub judice,* it is obvious that appellee knew of the existence of appellant's stock options when the original child support order was issued by the trial court. The hearing conducted to determine appellant's original child support obligation occurred after appellant exercised his stock option in 1984. Appellant's stock option was discussed during these hearings.

The trial court also acknowledged the existence of appellant's stock options in the report of the referee, issued on October 17, 1985. The following was stated concerning the stock options:

"Beginning September 6, 1985, as and for child support, the Defendant is to pay three (3) per cent of all income (after taxes) realized as a result of exercising stock options from the Diebold Corporation. This money is to be paid as soon as the amount is calculated, but no later than April 15th of the year following the exercise of the stock option."

However, for reasons not clear from the record, upon modification of the original child support order, the trial court dismissed the requirement that appellant pay three percent of all income realized from the exercise of his stock options. The referee's report was affirmed by the trial court on January 19,

1988. Appellee did not appeal the dismissal of the three-percent payment requirement. It was not until appellant exercised his stock options in 1993 that appellee claimed a right in these proceeds for child support purposes.

Based upon the above, we find that the trial court abused its discretion when it modified appellant's child support obligation based upon appellant's receipt of $164,273, because these monies qualify as "nonrecurring income" pursuant to R.C. 3113.215(A)(11). We will not address appellant's second and third assignments of error as they are moot based upon our finding concerning appellant's first assignment of error.

Appellant's first assignment of error is sustained.

## IV

In his final assignment of error appellant argues that the trial court abused its discretion in ordering him to provide health insurance for the child without first determining that coverage is available at a more reasonable cost to appellant. R.C. 3113.21(C)(1)(e)(i) provides that the child support enforcement agency should conduct an investigation to determine whether the obligor or obligee has satisfactory health insurance coverage.

The original referee's report issued on October 17, 1985, required appellant to maintain health care coverage on the minor child or reimburse appellee for amounts she spends for insurance. The report of the referee issued on December 17, 1987, which modified child support, provided as follows concerning health care coverage for the minor child:

"[T]he Court's prior order requiring payment of the ordinary medical, hospital, dental, optical and presciption [sic] expenses of the minor child be modified as follows: the custodial parent shall pay said expenses, either not covered by insurance or deductable [sic] from the non-custodial parent's insurance in the amount of $50.00 per month; that extaordinary [sic] medical, hospital, dental, optical and presciption [sic] expenses of the minor child, not covered by insurance, be shared equally between the parties."

The report of the referee at issue on appeal provides as follows concerning health care coverage:

"Commencing January 4, 1994 health care is ordered per Exhibit 'C.' Plaintiff is ordered to provide health care insurance. Defendant is ordered to provide health care insurance if it is available to him at a reasonable cost. Plaintiff is responsible for the uninsured ordinary expenses. Parties are to share responsibility for the uninsured extraordinary expenses, Plaintiff 12.4% and Defendant 87.6%."

It was appellant that orally moved at the hearing on March 21, 1994, to have the parties' health care obligations reallocated in light of the amount of child support he is currently paying to appellee. However, at the evidentiary hearing, appellant failed to present any evidence that he did not have health care coverage or that such coverage would not be available to him at a reasonable cost. Therefore, we find that the trial court did not abuse its discretion in ordering appellant to provide health care coverage if it is available to him at a reasonable cost. The investigation required by R.C. 3113.21(C)(1)(e)(i) was not necessary in this case because based upon the history of the case, the trial court already knew that appellant had health care coverage.

Appellant's fourth assignment of error is overruled.

For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part and reversed in part.

*Judgment accordingly.*

GWIN, P.J., and FARMER, J., concur.