DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Carole A. Kingsolver has appealed from a decision of the Summit County Court of Common Pleas, Domestic Relations Division that denied her motion for modification of spousal support. This Court reverses and remands.
 I {¶ 2} Defendant-Appellant Carole A. Kingsolver and Plaintiff-Appellee John T. Kingsolver were married in Detroit, Michigan, on December 30, 1972. Two children were born as issue of the marriage, to wit: Jennifer and Laura. Appellee filed for divorce on December 11, 1996. Appellant filed an answer and counterclaim for a legal separation on February 26, 1997; she later withdrew her answer and counterclaim. Before a trial was held on the matter, however, Appellant filed a motion for conciliation pursuant to R.C. 3105.091, wherein she requested the trial court order the parties to undergo conciliation for a period of ninety days and order the parties to undergo counseling. The order was granted on November 12, 1997.
 {¶ 3} The divorce was granted on June 9, 1998. A separation agreement, which the parties had previously entered into, was incorporated into the judgment entry of divorce. Appellant was designated as the primary residential parent and legal custodian of the minor child, Laura. Appellee was ordered to pay Appellant child support in the amount of $800 per month, plus a monthly processing fee. The terms of the divorce decree further provided that Appellee would pay Appellant spousal support in the amount of $1,500 per month, plus a 2% processing fee.
 {¶ 4} On June 24, 2002, Appellee filed a motion for: 1) change of custody;[1] 2) modification of spousal support; 3) child support; 4) referral to family court services; 5) appointment of guardian ad litem; and 6) attorney's fees. Specifically, Appellee requested an order changing custody of Laura from Appellant to him based on changed circumstances and to terminate his spousal and child support obligations. On August 5, 2002, Appellant filed a motion to increase spousal support. A hearing on the parties' motions was held on August 13, 2002. In an order dated August 23, 2002, the magistrate found that Laura was no longer residing with Appellant, but living with her adult sister in a condominium owned by Appellee. The magistrate set another hearing to address the financial issues (i.e., child support and spousal support) raised by both parties.
 {¶ 5} Another hearing was held on October 25, 2002. In an order dated November 26, 2002, the magistrate found that in addition to Laura living in a condominium owned by Appellee, Appellant paid "little or nothing" for Laura's expenses. The magistrate further found that at the time of the divorce, Appellee earned $84,696 and, "[f]or some reason not explained to the magistrate[,]" Appellant, a homemaker at the time of the divorce, was attributed earnings of $16,000. After the divorce, the income of both parties changed. The magistrate found that Appellee had retired, but that his annual income rose to $91,455, in addition to $43,434 pension he received annually. Appellant remained unemployed and the magistrate concluded that "[i]t is unlikely that she will enter the workforce." She did, however, receive $22,746 a year from Appellee's pension, in addition to interest income in the amount of $3,000 a year. The magistrate concluded that "[t]he parties' relative positions have not substantially changed since the divorce was granted" and that "[a] change in the amount of spousal support to be paid [was] not warranted." The magistrate dismissed Appellee's motion for change of custody; terminated Appellee's child support obligation; awarded Appellee judgment against Appellant in the amount of $3,500 for Laura's education expenses; and denied both parties' motions for modification of spousal support.
 {¶ 6} Appellant filed objections to the magistrate's decision. Appellant argued that the trial court erred in denying her motion for modification of spousal support. She maintained that the magistrate "failed to acknowledge and/or consider that, in addition to his substantial increase in salary, [Appellee] now annually receives 90% more than [Appellant] in pension benefits. From this change alone, the Magistrate erred by concluding that the parties' relative positions `have not substantially changed since the divorce was granted.'" Appellant further argued that "the Magistrate erred when she failed to consider the termination of child support and the impact that loss of $800 per month in income caused [Appellant's] `relative position.' Indeed, with [Appellee's] position $800 per month improved and [Appellant's] position $800 per month worsened, the differential on the `ledger' is $1,600 per month." In essence, Appellant contended that "[i]t was an abuse of the Magistrate's decision [sic] and an error as a matter of law for her to fail to find that the parties' relative positions had substantially changed." Appellee filed a response to Appellant's objections.
 {¶ 7} On September 15, 2003, the trial court overruled Appellant's objections. The trial court dismissed Appellee's motion for change of custody; terminated Appellee's child support obligation; awarded Appellee judgment against Appellant in the amount of $3,500 for Laura's education expenses; and denied both parties' motions for modification of spousal support.
 {¶ 8} Appellant has timely appealed, asserting one assignment of error.
 II Assignment of Error
"The trial court erred in holding that [appellant] had not shown a change in circumstances sufficient to permit modification of the spousal support set forth in a decree which expressly reserves to the court the authority to modify spousal support upon a change of circumstances."
 {¶ 9} In Appellant's sole assignment of error, she has argued that the trial court erred when it denied her motion for modification of spousal support. Specifically, Appellant has argued that the trial court employed the wrong standard of review when it determined whether there was a change of circumstances warranting a modification in spousal support.
 {¶ 10} As an initial matter, this Court notes that a trial court has broad discretion in determining a spousal support award, including whether or not to modify an existing award.Mottice v. Mottice (1997), 118 Ohio App.3d 731, 735; Schultzv. Schultz (1996), 110 Ohio App.3d 715, 724. Absent an abuse of discretion, a spousal support award will not be disturbed on appeal. Schultz, 110 Ohio App.3d at 724. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169.
 {¶ 11} R.C. 3105.18 governs the trial court's authority to modify an existing spousal support or alimony order. In order for a trial court to modify the amount or terms of spousal support, it must conduct a two-step analysis. Leighner v. Leighner
(1986), 33 Ohio App.3d 214, 215. In the first step, the trial court must determine whether: 1) the divorce decree contained a provision specifically authorizing the court to modify the spousal support; and 2) the circumstances of either party have changed. R.C. 3105.18(E); Leighner, 33 Ohio App.3d at 215. A change of circumstances "includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). The first step is jurisdictional in nature; if the moving party is unable to satisfy the first step, then the trial court does not have jurisdiction to modify the existing spousal order. R.C.3105.18(E); Leighner, 33 Ohio App.3d at 215.
 {¶ 12} Once the trial court finds that the moving party has satisfied the requirements of the first step, that is it determines that there was a change of circumstances and that the trial court retained jurisdiction to modify spousal support, the trial court must next determine "whether or not the existing order should be modified." (Emphasis sic.) Leighner,33 Ohio App.3d at 215. The court in Leighner explained that "[t]his latter inquiry involves re-examination of the existing order in the light of the changed circumstances, and requires a two-step determination: First, is * * * alimony still necessary? And, if so, what amount is reasonable?" Id. at 215; see, also, Johnsonv. Johnson (Dec. 23, 1993), 10th Dist. No. 93AP-806, 1993 Ohio App. LEXIS 6171, at *9 (noting that R.C. 3105.18(C)(1) modifiedLeighner to the extent that the trial court need not find that spousal support is still "necessary," but must determine if it is "appropriate"). The trial court should look to the relevant factors listed in R.C. 3105.18(C) in addressing the last prong of the Leighner two-step analysis. Id. at 215, citing Bingham v.Bingham (1983), 9 Ohio App.3d 191.
 {¶ 13} In the instant matter, the trial court denied Appellant's motion for modification of spousal support, stating:
"After a review of the transcript, the Court concludes that there has been no change of circumstances that the parties should not have contemplated at the time of the divorce. The parties were aware when Laura would emancipate and when [Appellee] would reach retirement age. The possibility that [Appellee] may obtain another position after retirement should have also been contemplated because of his young retirement age."
 {¶ 14} Based on the above cited language employed by the trial court, it is clear that the trial court only conducted the first step of the two-step analysis outlined in Leighner. InLeighner the court explained that a "change of circumstances must be substantial and must be such as was not contemplated at the time of the prior order." Here, the trial court stated that a change of circumstances had not occurred because the events that took place after the parties divorced should have been contemplated at the time of the divorce. Although the trial court did not specifically state that it did not have jurisdiction to modify the existing spousal support order, by concluding that any changes that occurred should have been contemplated by the parties or foreseeable at the time of the divorce the trial court necessarily held that it did not have jurisdiction to alter or modify the support order.
 {¶ 15} Appellant has contended that the definition of a "change of circumstances" applied in Leighner, and in later Ninth District Appellate cases like
Moore v. Moore (1997), 120 Ohio App.3d 488, is no longer viable in light of the statutory amendments to R.C.3105.18(E).[2] Specifically, Appellant has argued that "[n]either the 1986 nor the 1991 statutory amendments [to R.C.3105.18] incorporated any language which suggested that a court's jurisdiction to modify support depended upon a `drastic' or even a `substantial' change of circumstances." This Court, after reviewing the legislative history and judicial treatment of R.C.3105.18, agrees with Appellant's assertion that a moving party attempting to demonstrate a "change of circumstances" is not required to show that the change was "substantial" or "drastic."
 {¶ 16} R.C. 3105.18 was enacted in 1958. As originally enacted, R.C. 3105.18 did not specifically provide for modification of existing alimony or spousal support orders. Because such authority was not specifically conveyed to the trial courts, the Ohio Supreme Court held that the authority to modify an existing support order was implied in the divorce decree.Wolfe v. Wolfe (1976) 46 Ohio St.2d 399, paragraph two of the syllabus; see, also, McClain v. McClain (1984),15 Ohio St.3d 289, 290 (limiting the scope of Wolfe). It was not until May 2, 1986, that the legislature specifically addressed the trial court's authority to modify existing alimony or spousal support orders. In 1986, the following provision was added to R.C.3105.18:
"(D) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after the effective date of this amendment, the court that enters the decree of divorce ordissolution of marriage does not have jurisdiction to modify theamount or terms of the alimony unless the court determines thatthe circumstances of either party have changed and unless one of the following applies:
"(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony;
"(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony." (Emphasis added.) R.C.3105.18(D) as amended by Am.H.B. 858.
 {¶ 17} The amended version of R.C. 3105.18 fails to provide a definition of "change of circumstances." As the Ohio legislature failed to statutorily define "change of circumstances," Ohio courts supplemented the statute with a judicial definition of the phrase. As previously discussed, the Tenth District Appellate court in Leighner defined a "change of circumstances" as something "substantial" and "not contemplated [by the parties] at the time of the prior order." Leighner, 33 Ohio App.3d at 215. After the court's decision in Leighner, however, the legislature once again amended R.C. 3105.18. In January 1991, not only did the legislature add language which allowed trial courts to modify both alimony and spousal support orders, but it also defined "change of circumstances." The following is the January 1, 1991 version of R.C. 3105.18, as amended by Am.Sub.H.B. No. 514 (note that R.C. 3105.18 has been restructured and subdivision (D) is now subdivision (E)):
"(E) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after May 2, 1986 and before the effective date of this amendment or if a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after the effective date of this amendment, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
"(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support;
"(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
"(F) For purposes of divisions (D) and (E) of this section, achange in the circumstances of a party includes, but is notlimited to, any increase or involuntary decrease in the party'swages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18, as amended by Am.Sub.H.B. 514.
 {¶ 18} As cited above, the Ohio legislature has defined "change of circumstances" to mean "any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). The statutory definition of "change of circumstances" is not as narrowly defined asLeighner's definition of "change of circumstances." TheLeighner definition is more restrictive because it not only requires a showing that there is "any" change, but that such a change is "substantial" and unforeseen. Thus, the party requesting the modification in child support has a greater or heavier burden of proving a change of circumstances under theLeighner definition.
 {¶ 19} Despite the statutory definition of "change of circumstances" inserted into R.C. 3105.18 in January 1991, Ohio courts have continued to use the Leighner definition of "change of circumstances." It is this Court's obligation, however, to correctly apply a statute as it was intended by the legislature. In carrying out this task, we are keenly aware of the laws of statutory interpretation. The Ohio Supreme Court has held that "[i]n construing a statute, the court's paramount concern is legislative intent." (Alteration sic.) State ex rel. Savarese v.Buckeye Local School Dist. Bd. of Edn. (1996),74 Ohio St.3d 543, 545, citing State ex rel. Solomon v. Police Firemen'sDisability Pension Fund Bd. of Trustees (1995),72 Ohio St.3d 62, 65. The Ohio Supreme Court has further explained:
"In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished. If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." (Citations omitted.) Savarese,74 Ohio St.3d at 545.
 {¶ 20} Relying on prior Ohio Supreme Court case law, this Court has also held that "[a] court may interpret a statute only where the statute is ambiguous." Donnelly v. Kashnier, 9th Dist. No. 02CA0051-M, 2003-Ohio-639, at ¶ 27. "To interpret language that is already plain is to legislate, which is not a function of the court." Tolliver v. City of Middletown (June 30, 2000), 12th Dist. No. CA99-08-147, 2000 Ohio App. LEXIS 2970, at *12, appeal not allowed (2000), 90 Ohio St.3d 1450, citingSears v. Weimer (1944), 143 Ohio St. 312. A statute may be considered ambiguous if its language is susceptible to more than one reasonable interpretation. State ex rel. Toledo Edison Co.v. Clyde (1996), 76 Ohio St.3d 508, 513.
 {¶ 21} The term "any" is defined as "unmeasured or unlimited in amount, quantity, number, time or extent: up to whatever measure may be needed or desired." Webster's 3rd New International Dictionary (1993) 97. The term "any" contained in R.C. 3105.18(F) is unambiguous; the use of that term does not yield more than one reasonable interpretation. Thus, this court need not attempt to interpret the statute, but must apply the statute as written. Based on Webster's definition, this Court finds that the Ohio legislature did not intend to have the term "any," as the word is used in R.C. 3105.18(F), interpreted to mean "substantial" or "drastic."[3] It is obvious that the term "any" is not as narrow in scope as the terms "substantial" or "drastic." This Court believes that if the Ohio legislature envisioned a more restrictive standard for the phrase a "change of circumstances," it would have included such terms as "substantial," "drastic," "material," or "significant" in the 1991 amendments. Instead, however, the legislature chose to use the term "any," which refers to changes that have an effect on the economic status of either party.
 {¶ 22} Our view of the legislature's intent undoubtedly broadens the trial court's authority to modify a support order. Giving the trial court greater authority to review a party's request for modification of spousal support (or accept jurisdiction) pursuant to this Court's interpretation of the term "any" is consistent with prior case law that has held that a trial court has broad discretion in determining whether spousal support should be awarded, and the amount to be awarded. SeeMottice, 118 Ohio App.3d at 735; Schultz,110 Ohio App.3d at 724. This Court, therefore, finds merit in Appellant's argument that "[b]y requiring — as a jurisdictional prerequisite — that the change of circumstances be `substantial' or `drastic' this court's prior rulings unduly impair[s] the discretion which the legislature intended to confer upon the trial courts."
 {¶ 23} In sum, we find that the holding in Leighner remains good law with respect to the two-part analysis that should be applied when a trial court is asked to modify an existing spousal support order. However, the Leighner definition of "change of circumstances" is no longer the appropriate standard in determining whether a trial court has the jurisdiction to modify a support order. The term "any," as it is used in R.C.3105.18(F), does not mean "substantial" or "drastic." In reviewing a party's request to modify a spousal support, the trial court need only determine whether a change has occurred in the party's economic status (i.e., an increase or decrease in wages, salary, living expenses, or medical expenses) after the spousal support order was entered into. The change could have less than a significant effect on the party's economic status; it is within the discretion of the trial court to decide whether a change has, in fact, occurred.[4]
 {¶ 24} Because this Court finds that the standard for determining whether the trial court has the authority to modify an existing support order pursuant to R.C. 3105.18(E) is a showing that there has been "any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses," we find that the trial court erred in holding that "there has been no change in circumstances that the parties should not have contemplated at the time of the divorce." The evidence presented at the hearing held on October 25, 2002, showed that Appellee's salary increased from $84,696 a year to $134,889 a year. Appellant's salary increased from $16,000 a year, which was imputed to her via a worksheet at the time of the divorce, to $25,746 a year. The parties' also testified that Laura was no longer living with Appellant, but with her sister in a condominium supplied by Appellee. These changes may not be considered "substantial" or "drastic" or unforeseen as was required by Leighner, but they most certainly qualify as "any" increase or involuntary decrease in the parties' economic status. As such, we find that the trial court had jurisdiction to modify the spousal support order because a change of circumstances had occurred pursuant to R.C. 3105.18(E) and (F). This is not to say, however, that the trial court should have modified the spousal support order. The trial court never addressed the second step of the Leighner two-part analysis once it concluded that there was no change of circumstances. This matter should be addressed by the trial court on remand, and in considering whether a modification of spousal support is warranted the trial court must remember to consider the factors listed in R.C. 3105.18(C).
 {¶ 25} Appellant's assignment of error is well taken.
 III {¶ 26} Appellant's sole assignment of error is sustained. The judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Exceptions.
Baird, J., Batchelder, J., concur.
[1] Appellee later withdrew the motion for reallocation of parental rights.
[2] This Court, and other appellate courts, have consistently relied on the holding in Leighner, even after the 1991 amendment to R.C. 3105.18. We have held that in order to modify an existing spousal support order the party requesting the modification must show a change of circumstances that is "substantial" (see Laubert v. Clark, 9th Dist. No. 03CA0077-M, 2004-Ohio-2113, at ¶ 8; Simcox v. Simcox, 9th Dist. No. 21342, 2003-Ohio-3792, at ¶ 5; Koch v. Koch, 9th Dist. No. 02CA001-M, 2002-Ohio-4400, at ¶ 6; and Bowen v. Bowen (April 5, 2000), 9th Dist. No. 2944-M, at 3) or "drastic" (see Mottice v. Mottice
(1997), 118 Ohio App.3d 731; Zahn v. Zahn, 9th Dist. No. 21541,2003-Ohio-6124, at ¶ 18 and Abate v. Abate (Mar. 29, 2000), 9th Dist. No. 19560, at 17).
[3] In addition to the requirement that any change of circumstances be "substantial" or "drastic," the Leighner court also explained that the changes should not have been contemplated by the parties at the time of the divorce. However, the statutory amendments to R.C. 3105.18 do not require that economic changes be reasonably unforeseeable. We find that such a limitation on the phrase "change of circumstances" was also, therefore, not contemplated by the Ohio Legislature.
[4] We note that existing guidelines regarding the filing of frivolous pleadings are necessarily incorporated into the change of circumstances analysis. Moreover, it cannot reasonably be said that the Ohio Legislature's use of the word "any" change was contemplated to mean any nominal change or to condone the filing of frivolous pleadings merely for the purpose of harassment.