OPINION
{¶ 1} Defendant-appellant, Henry Conrad, appeals from a Mahoning County Common Pleas Court, Domestic Relations Division decision setting his child support payments.
 {¶ 2} Appellant and plaintiff-appellee, Kathryn Conrad, were divorced on December 30, 2003. At that time, the parties had shared parenting of their child Taylor and neither party paid child support to the other.
 {¶ 3} Shared parenting was terminated on June 20, 2005. Appellee was designated as Taylor's residential parent. Appellant was ordered to pay appellee $180.50 per month in child support, the magistrate having imputed minimum-wage income to him. At that time, the magistrate stated that he was reserving the right to adjust appellant's child support obligation retroactive to July 1, 2005. The magistrate stated that a future hearing would take place in order to determine appellant's income for purposes of completing the child support worksheet and ordered the parties to bring copies of their 2004 income tax returns.
 {¶ 4} The matter proceeded before the magistrate where he heard testimony from both parties and their accountants. The magistrate also considered both parties' 2004 income tax returns. Appellee's income tax return reflected approximately $31,100 in capital gains from the sale of realty and further capital gains on the sale of stock investments for a total of $52,287 in capital gains. Appellant's tax return showed capital gains of $42,779 resulting from the sale of realty. However, his tax return actually stated a net loss of $15,579. Appellant acknowledged investments totaling close to $200,000. Appellant stated that he sold a rental property in 2004 netting $44,000 and another property in 2005 netting $30,000. Appellant described himself as being in the business of "property management" and stated that he owns approximately 18 properties. He said he earns his income from the rent paid on the properties. Appellant has no other employment.
 {¶ 5} The magistrate noted that both parties have stocks and real estate which they have bought and sold resulting in capital gains. He further noted that *Page 2 
both parties continue to own rental properties and reported net operating losses on their 2004 tax returns.
 {¶ 6} Based on this information, the magistrate included $52,287 in capital gains as additional income for appellee on the child support worksheet. He included $45,196, $41,842 of which was from the sale of a rental property, as income for appellant on the worksheet. In doing so the magistrate stated, "since * * * [appellant] is in the realty management business, and since this is his principle (sic) source of income from which he earns a living, it is not unreasonable to expect the gains received from the sale of various properties to be a recurring, rather than a one-time event." (Magistrate decision at ¶ 15). Additionally, the magistrate noted that it was equitable to include the capital gains from the sale of realty because he did so for both parties. Including these figures on the worksheet, the magistrate determined that appellant's monthly child support obligation was $483.82.
 {¶ 7} Appellant filed objections to the magistrate's decision arguing that the magistrate erred in including his capital gains from the sale of real estate in computing his income because it is nonrecurring income. He asserted that only minimum wage should be imputed to him and used for his income calculation.
 {¶ 8} The trial court held a hearing on appellant's objections. It overruled the objections and found as follows. In some years appellant claims capital gains income while in other years he uses 1031 exchanges to defer capital gains taxes. Appellant has only one bank account that he uses for both business and personal expenses. Appellant sold his property known as the Tabby Walk property in 2004, received approximately $44,000 in proceeds, and used the money to pay bills. In 2005, appellant sold his property known as the Cotton Hope property and received approximately $28,000 in proceeds. Appellant has the ability to control how the proceeds of a sale will be utilized — whether to pay bills or to funnel the money into a 1031 exchange. The court concluded that since appellant has the ability to control his income in this manner, he has the ability to use this money to pay his child support obligation. Therefore, the court adopted the magistrate's decision. *Page 3 
 {¶ 9} Appellant filed a timely notice of appeal on August 18, 2006.
 {¶ 10} Upon appellant's motion, this court issued a stay of execution of the trial court's judgment on September 27, 2006.
 {¶ 11} Appellant raises a single assignment of error, which states:
 {¶ 12} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY INCLUDING A NONRECURRING CAPITAL GAIN AS INCOME FOR THE PURPOSE OF CALCULATING APPELLANT'S CHILD SUPPORT OBLIGATION,"
 {¶ 13} Appellant argues the trial court erred in including capital gains income for both parties from the sale of real estate.
 {¶ 14} When reviewing child-support matters, an appellate court applies an abuse-of-discretion standard. Booth v. Booth (1989),44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 15} When computing child support payments, the trial court is to determine the parties' annual gross income using the child support worksheet provided in R.C. 3119.022.
 {¶ 16} Gross income includes, "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses * * * and all other sources of income." R.C.3119.01(C)(7). Gross income does not include, "[n]onrecurring or unsustainable income or cash flow items." R.C. 3119.01(C)(7)(e). A nonrecurring or unsustainable income or cash flow item is, "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3110.01(C)(8).
 {¶ 17} Appellant first argues that the real estate sales took place in 2004, at least two years prior to the child support hearing, so the court should not have *Page 4 
included them.
 {¶ 18} While the sales took place in 2004 and the hearing took place in 2006, the 2004 income tax returns were the most recent returns the parties had. Thus, it was reasonable for the court to rely on them since the returns were the most current reflection of the parties' income that they had available to submit to the court.
 {¶ 19} Appellant's main contention is that all Ohio cases that have dealt with this issue have rejected the argument that capital gains from the sale of real estate should be considered income for the purposes of calculating child support. He further contends that the courts have found that capital gains from the sale of real estate is nonrecurring or unsustainable income.
 {¶ 20} We must consider the evidence regarding appellant's income and determine whether the facts of this case are distinguishable from those in the cases upon which he relies.
 {¶ 21} The evidence regarding appellant's income revealed the following.
 {¶ 22} When asked what his current employment was, appellant stated that he is a self-employed "property manager." (Feb. 28 Tr. 25). He stated he has been managing property for 25 years and that it has been his sole source of income since the divorce in 2002. (Feb. 28 Tr. 25). Appellant's accountant agreed that appellant earns his income from rental properties and sales. (Jan. 17 Tr. 83).
 {¶ 23} Appellant testified that he owns approximately 18 properties in Ohio, South Carolina, and Florida. (Jan. 17 Tr. 40-41; Feb. 28 Tr. 43). He stated that in 2005, he sold his Cotton Hope property for a profit of roughly $30,000. (Jan. 17 Tr. 41, 50). Appellant also stated that in 2004, he sold his Tabby Walk property for a net pay of $44,000 and used the money to pay bills. (Jan. 17 Tr. 48). Also in 2004, there was a fire at one of appellant's properties. He used the insurance proceeds from the fire to reinvest in another property. (Feb. 28 Tr. 29). And appellant used a 1031 exchange to sell his Sands Village property in 2004 and buy a property in Florida. (Feb. 28 Tr. 34, 43). On that exchange, appellant netted $60,000. (Feb. 28 Tr. 49). He reinvested that money into the Florida property. (Feb. 28 Tr. 49). *Page 5 
 {¶ 24} Appellant stated that he does not have any other source of income other than his real estate and investments. (Jan. 17 Tr. 43-45). He further testified that he has only one bank account that he uses for both business and personal expenses. (Jan. 17 Tr. 45-46).
 {¶ 25} When questioned about the exchanges of property to avoid tax consequences appellant stated, "[t]hat's how I have done this business for the last ten years." (Feb. 28 Tr. 46). And when commenting on the equitable amount of money he should pay in child support, appellant referred to a court order from the divorce proceedings stating that because of the court's order not to buy and sell, he ran up tremendous debts. (Feb. 28 Tr. 53).
 {¶ 26} Appellant's accountant, Barbara Puger, explained how a 1031 exchange works. A property owner can exchange properties by selling one property and buying another. If the owner does not touch the money earned on the sale of the original property, but instead uses it to purchase another property of equal or greater value, then it is a non-taxable event to the IRS. (Jan. 17 Tr. 63). In this way, the property owner can avoid paying capital gains tax. (Jan. 17 Tr. 63). By deferring the tax burden, the income too is deferred. (Jan. 17 Tr. 65). This process of exchanging can go on indefinitely. (Jan. 17 Tr. 65). Puger stated that appellant did a 1031 exchange on his Sands Village property in 2004. (Jan. 17 Tr. 63). Thus, in 2004, appellant sold one property, Tabby Walk, and exchanged another, Sands Village. (Jan. 17 Tr. 64).
 {¶ 27} Appellant relies on numerous cases in support of his position.
 {¶ 28} In Leffel v. Leffel (June 15, 2001), 2d Dist. No. 2000-CA-78, the father argued that the trial court erred in including nonrecurring capital gains he earned from the sale of a piece of property in recalculating his child support obligations. The appellate court reversed finding that a "one-time gain from the sale (not in the ordinary course of business) of a lot constitutes nonrecurring income." Id.
 {¶ 29} In Smith v. Smith (Dec. 4, 1998), 2d Dist. No. 98 CA 4, the father was awarded the marital residence in the separation agreement. After the divorce, the *Page 6 
real estate appreciated in value and the father sold it receiving a net capital gain of $110,000. He planned to use the money to purchase another house, thus deferring payment of the capital gains tax. The mother filed a motion to increase child support pointing to the capital gains as justification. The trial court held the income to be nonrecurring and denied the mother's motion for an increase in support. The appellate court affirmed, noting that when parties divide property, they each take the risk that the property they receive will decrease in value and benefit if it increases in value.
 {¶ 30} The court further distinguished the matter fromSchneeberger v. Schneeberger (Dec. 19, 1996), 8th Dist. No. 70525, where the father owned a steel mill and, after the parties' divorce, paid himself a large bonus and took his company public which gave him another large sum of money. The court in that case called it a travesty of justice not to give consideration to the one-time earnings that occurred shortly after the divorce. It further stated that to not consider them "`would create a loop-hole for paying child support to obligors who havecontrol over their own income distribution.'" (Emphasis sic).Smith, quoting Schneeberger.
 {¶ 31} In Cooper v. Cooper, 12th Dist. No. CA2003-05-038,2004-Ohio-1368, the court held that $42,000 the father received for his equity in the marital residence when it was sold was a nonrecurring cash flow item.
 {¶ 32} In Mahlerwein v. Mahlerwein, 160 Ohio App.3d 564,828 N.E.2d 153, 2005-Ohio-1835, the Fourth District concluded that $23,808 that the father had earned when he sold his modular home was a one-time capital gain and the trial court properly excluded it when calculating his gross income.
 {¶ 33} Finally, in Yost v. Unanue (1996), 109 Ohio App.3d 294,671 N.E.2d 1374, the mother sought an increase in child support based upon the father's receipt of $164,273 following the exercise of a stock option. The trial court granted the motion. On appeal, the father argued that the trial court abused its discretion and erred as a matter of law when it included the capital gain generated from his sale of the stock option for purposes of determining his child support obligation because the *Page 7 
capital gain was not recurring income. The Fifth District agreed. First, the court noted that there was no evidence that the father exercised the stock option each year for a period of more than three years which would require the trial court in calculating child support to include it as income. Id. at 297. Second, the court pointed out that there was no evidence in the record that the father would continue to receive income from the stock options in the future. Id. at 298.
 {¶ 34} This case is distinguishable from those cited above. In this case, there is evidence to support the trial court's determination that appellant is in the business of buying and selling real estate. Appellant owns at least 18 properties. While he stated that his income is derived solely from rent paid on these properties, the evidence seems to indicate that appellant is not merely a rental manager. In 2004, appellant sold one of his properties to pay bills. That year he also sold another property and used the proceeds in an exchange to purchase another, more expensive property. When he lost another one of his properties to a fire, he promptly used the insurance proceeds to purchase a new property. In 2005, appellant sold yet another property. Additionally, appellant uses only one bank account in which he commingles personal and business monies. And when questioned about the exchanges of property to avoid tax consequences appellant stated, "[t]hat's how I have done this business for the last ten years." (Feb. 28 Tr. 46). He later stated that he had accumulated up a large amount of debt because the court ordered him to not buy or sell property during the divorce. Thus, in these two comments, appellant referred to the buying and selling of property as his business and as his way to pay his bills. Even appellant's accountant agreed that appellant earns his income from rental properties and sales.
 {¶ 35} In none of the cases relied upon by appellant was there any evidence that the capital gains earned on the sales of property or stocks was a recurring event. And in none of those cases did the evidence demonstrate that the obligor was involved in a business from which he netted the capital gains as his income.
 {¶ 36} Furthermore, in Leffel, 2d Dist. No. 2000-CA-78, the court held that a *Page 8 
"one-time gain from the sale (not in the ordinary course ofbusiness) of a lot constitutes nonrecurring income." (Emphasis added.) In this case, the evidence can support the notion that appellant's sale of realty occurred in the ordinary course of business.
 {¶ 37} And in Schneeberger, 8th Dist. No. 70525, in which the court found that one-time earnings should be counted as income for child support purposes, the court stated that to not consider them "`would create a loop-hole for paying child support to obligors who have controlover their own income distribution.'" (Emphasis sic). Smith, 2d Dist. No. 98 CA 4, quoting Schneeberger. In the case at bar, the evidence demonstrated that appellant has control over his own income distribution. Appellant is the one who makes the determination whether to sell a given property and whether to use that money to pay his bills or to reinvest it in a 1031 exchange for another property.
 {¶ 38} Additionally, the magistrate and the trial court both spent a considerable amount of time analyzing all of the evidence in this case and their findings reflect this. Because there is evidence to support the conclusion that appellant is engaged in the business of buying and selling real estate, it was reasonable for the court to include appellant's capital gains from the sale of real estate as income when computing child support. This holding, however, is limited to the specific facts of this case. If the evidence did not indicate that appellant derived his income from the buying and selling of real estate then it would seem clear that capital gains from the sale of one parcel of property by appellant would be a nonrecurring event not subject to inclusion as income for child support computation purposes.
 {¶ 39} The trial court also included appellee's capital gains from the sale of property. There was no evidence that appellee solely earns her living buying and selling real estate. Unlike appellant, appellee has another job working for a doctor at which she earned $27,843 in 2004. However, there was testimony that appellee too was engaged in the business of buying and selling real estate and that she owned *Page 9 
four properties. (Jan. 17 Tr. 10-12). Furthermore, it was equitable for the court to include appellee's income from property sales as it did with appellant's income.
 {¶ 40} Appellant finally points to the magistrate's finding that he should be seeking employment in another field for which he has education, training, or knowledge. However, the magistrate did not find appellant to be voluntarily unemployed or underemployed. Appellant argues that such a finding was necessary before the magistrate could have imputed income to him. He contends that if the magistrate believed that he was underemployed, the magistrate should have made such a finding after analyzing the factors set out in R.C. 3199.01(C)(11)(a), including such things as his education and experience. But instead of doing so, appellant argues that the magistrate included the capital gains from the sale of real estate as income.
 {¶ 41} The magistrate did find that appellant cannot be permitted to largely avoid his support obligation by continuing in a profession in which he claims he earns no assignable income from which he can pay support. He also found that appellant has a bachelor's degree in accounting and extensive experience in investments and should be able to obtain a position that would allow him to support his child. The magistrate stopped short of ordering appellant to seek other employment but cautioned that if appellant continued to claim insufficient income from which he can pay support then the magistrate would issue such an order.
 {¶ 42} The trial court acknowledged this finding by the magistrate. The court stated that the magistrate had three other possible ways to determine appellant's income: (1) he could have used the R.C. 3119.01(C) factors to determine that appellant is voluntarily underemployed; (2) he could have considered appellant's capital gains income as a factor for granting an upward deviation in support pursuant to R.C. 3119.22; or (3) he could have considered appellant's failure to exercise his parenting time as a reason for granting an upward deviation in support.
 {¶ 43} But the magistrate did not utilize any of these methods in computing support. The magistrate did not find appellant to be voluntarily underemployed. *Page 10 
Instead, he found that appellant was employed in the business of buying, selling, and managing real estate and that this employment earned him capital gains income. If appellant continues with his business and makes his support payments, then there would be no reason for a finding that he is underemployed. The magistrate simply afforded him the opportunity to do so.
 {¶ 44} Accordingly, the trial court did not abuse its discretion. While under many other circumstances it would be an error to include capital gains income from the sale of a piece of property, in this particular case it was reasonable. Therefore, appellant's sole assignment of error is without merit.
 {¶ 45} For the reasons stated above, the trial court's judgment is hereby affirmed.
 Vukovich, J., concurs. Waite, J., concurs. *Page 1