DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Peter Karis, appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that denied his motion to terminate spousal support and held him in contempt for failure to make spousal support payments to Appellee, Karen Karis. We affirm in part and reverse in part.
 {¶ 2} Husband and Wife divorced in 1992 after twenty-six years of marriage. At the time of the divorce, Husband operated two businesses: PK Holding Company, which operated a restaurant franchise, and Karis Advertising, Inc. As a result of the property division, Wife received a lump sum in the amount of one-half of the value of the businesses, which were valued at $250,000 and *Page 2 
$977,000, respectively. Husband was also ordered to pay spousal support in the amount of $2,500 per month as an ongoing obligation. This court affirmed the distribution of property and the spousal support award, but reversed on the application of amended R.C. 3105.18. Karis v. Karis
(Nov. 4, 1992), 9th Dist. No. 15556.
 {¶ 3} Husband closed Karis Advertising in August 2004 and unilaterally stopped paying spousal support at that time. He and his new wife sold their home in Kirtland, Ohio, relocated to Hilton Head, South Carolina, where they owned a second home, and acquired several additional residential properties. Some of these properties became rental homes; others were "flipped" and the proceeds reinvested in other properties.
 {¶ 4} On September 10, 2004, Husband moved to terminate or modify the support order, arguing that the closure of Karis Advertising signified his retirement and that he was in declining health. Husband also moved the trial court to terminate his obligation to maintain life insurance securing payment of spousal support. On November 23, 2004, Wife moved for an order holding Husband in contempt for failure to pay spousal support. Following a hearing on the motions that took place over two days, on February 9, 2006, and August 28, 2006, the magistrate granted Husband's motion to modify and reduced Wife's spousal support award to one dollar per year in order to retain jurisdiction to make future modifications, indicating his inclination to order Wife to pay spousal support to *Page 3 
Husband at a future date. In so doing, the magistrate characterized the money generated by Husband's real estate activity as "a far cry from `earned income'" and, instead, considered it to be an investment derived from Husband's share of the original property distribution. The magistrate also granted Husband's motion to terminate his life insurance obligation and denied Wife's motion for contempt.
 {¶ 5} Wife filed timely objections to the magistrate's decision and, on June 20, 2007, the trial court sustained her objections in their entirety, restored her spousal support award to its pre-motion level, and ordered Husband to maintain life insurance to secure the spousal support obligation. The trial court found Husband in contempt, ordered him to pay an additional $500 per month toward the arrearage, and sentenced him to three days' jail time, suspended on the condition that he purge the contempt. Husband filed this appeal, asserting two assignments of error.
 ASSIGNMENT OF ERROR I "The trial court abused its discretion in overruling the Magistrate's Decision finding that spousal support should be modified based upon an erroneous holding by the trial court that the 2005 capital gain income should be included within Husband's income for spousal support purposes."
 {¶ 6} In his first assignment of error, Husband maintains that the trial court erred by sustaining Wife's objections to the magistrate's decision and thereby including capital gains from the sale of several properties in Hilton Head within its calculation of his income for purposes of determining whether his *Page 4 
spousal support obligation should be modified or terminated. Specifically, Husband argues that the capital gain is not recurring income and, therefore, should be omitted from the spousal support calculation. His position is that he has no income from which to maintain his support obligation.
 {¶ 7} This court reviews a trial court's decision regarding modification of spousal support under an abuse of discretion standard.Barrows v. Barrows, 9th Dist. No. 21904, 2004-Ohio-4878, at ¶ 4. Accordingly, a party must demonstrate not merely an error of law or judgment, but that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 8} R.C. 3105.18 requires a two-step analysis before an award of spousal support may be modified. Leighner v. Leighner (1986),33 Ohio App.3d 214, 215. The first step, which is jurisdictional, requires the trial court to determine whether the original divorce decree provided continuing jurisdiction to modify the spousal support award. R.C.3105.18(E). If so, the trial court must determine whether the circumstances of either party have changed. Id. The change in circumstances need not be substantial or drastic. Kingsolver v.Kingsolver, 9th Dist. No. 21773, 2004-Ohio-3844, at ¶ 21 (analyzingLeighner, 33 Ohio App.3d 214, in light of amendments to R.C. 3105.18). In other words, "the trial court need only determine whether a change has occurred in the party's economic status (i.e., an increase or decrease in wages, salary, living expenses, or medical expenses) after *Page 5 
the spousal support order was entered into. The change could have less than a significant effect on the party's economic status; it is within the discretion of the trial court to decide whether a change has, in fact, occurred." (Emphasis omitted.) Id. at ¶ 23.
 {¶ 9} Once a trial court has determined that it retains jurisdiction to modify an award of spousal support, it must determine whether the award should be modified. Kingsolver at ¶ 12. This step requires the court to reevaluate the existing support order, with reference to the factors set forth in R.C. 3105.18(C), to determine what level of spousal support is appropriate and reasonable. Pointinger v. Pointinger, 9th Dist. No. 22240, 2005-Ohio-2680, at ¶ 16, citing Leighner,33 Ohio App.3d at 215.
 {¶ 10} In this case, the trial court stated that "the parties do not dispute that the Court has jurisdiction to modify the spousal support; the issue is whether there has been a change in circumstances that would make a modification reasonable and appropriate." The analysis actually employed by the trial court, however, indicates that the focus of its decision was not on the jurisdictional prong of the Leighner analysis, but on whether a termination or modification of support was reasonable and appropriate. Likewise, it is with the second step of theLeighner analysis that this appeal is concerned. More specifically, the issue in this case is whether the trial court abused its discretion by considering the money generated *Page 6 
by Husband's real estate ventures to be income for purposes of its spousal support determination.
 {¶ 11} R.C. 3105.18(C)(1), which describes the factors that are to be considered with respect to an award of spousal support, provides that the trial court is to consider "[t]he income of the parties, from allsources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code[.]" (Emphasis added.) R.C. 3105.18(C) does not limit the sources from which income may be derived or the characteristics of income that may be considered for purposes of determining an appropriate award of spousal support. In contrast, R.C. 3119.01(C)(7)(e) specifically excludes "[n]onrecurring or unsustainable income or cash flow" from gross income for purposes of child support. "A nonrecurring or unsustainable income or cash flow item is, `an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis.'" Conrad v. Conrad, 7th Dist. No. 06-MA-128,2007-Ohio-3186, at ¶ 16, quoting R.C. 3119.01(C)(8). This exclusion is not found in R.C. 3105.18, nor does R.C. 3105.18 incorporate this limitation by reference. Husband's reliance on R.C. 3119.01(C) is misplaced and, because R.C. 3105.18(C)(1)(a) does not limit the trial court's discretion to consider nonrecurring income, the trial court did not abuse its discretion by *Page 7 
considering Husband's capital gains to be income in this case for that reason alone.
 {¶ 12} Nor did the trial court abuse its discretion on the facts of this case. Capital gains may be considered income — even under the more restrictive definition set forth in R.C. 3119.07(C) — when the surrounding circumstances indicate that the party to whom the income is attributed is in the business of buying and selling real estate. See, e.g., Conrad, 2007-Ohio-3186, at ¶ 34-41. In that instance, capital gains are a recurring event over which the investor maintains some degree of control to the extent that he determines what properties to buy and sell and when to do so, within the confines of the real estate market. See id. at ¶ 34-37.
 {¶ 13} The evidence in this case indicates that Husband used income from the sale of his residences in Ohio and Hilton Head to purchase a significant amount of property in Hilton Head. He then engaged in a pattern of selling the appreciated property and reinvesting the capital gain from the sale in additional properties. At various times, Husband received income from both seasonal and long-term property rentals. Husband characterized himself as an "entrepreneur" whose goal and intention was to earn income by buying and selling real estate. With respect to his options on several parcels of land scheduled for development, for example, Husband testified:
 "Q: And you're like one of the creators of the real estate budget, right? Real estate bubble, right? *Page 8 
 "A: Yeah. Pretty much.
 "Q: It's called flipping, right?
 "A: Yes.
 "Q: In other words, you're getting in at maybe preconstruction cost?
 "A: Yes.
 "Q: And you're hoping that you can turn around and flip the property and make a profit?
 "A: Yes."
On the facts of this case, we are persuaded that the trial court did not abuse its discretion by determining that Husband's capital gains should be considered income for purposes of R.C. 3105.18(C)(1)(a).
 {¶ 14} With respect to the additional factors set forth in R.C.3105.18(C)(1), the trial court concluded:
 "a. The Husband has substantially greater income than Wife.
 "b. The Husband has greater earning capacity than Wife.
 "c. The parties are older than at the time of the divorce.
 "d. The parties had a lengthy marriage.
 "e. The parties had a very comfortable standard of living. At the present time Husband is able to maintain that standard of living for his new wife and family from his earnings. Without spousal support, the Wife would have to draw down on her savings in order to enjoy a lifestyle comparable to Husband's.
 "f At the time of the divorce, the parties had equivalent assets. Subsequent to the divorce, the Husband was able to increase his net worth as a result of his continued employment in advertising. *Page 9 
 "g. Wife's income production capacity was affected by her role in marriage as a homemaker."
The trial court also noted that although Husband underwent surgery for prostate cancer, he "has tested negative ever since, therefore the Court does not find that his health is an issue at this time."
 {¶ 15} Husband maintains that he has "paid his fair share" in terms of spousal support. The evidence indicates, however, that the trial court did not abuse its discretion by sustaining Wife's objections to the magistrate's decision and denying Husband's motion to terminate spousal support. Husband's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "The trial court abused its discretion in continuing the obligation to maintain life insurance to insure future spousal support obligations."
 {¶ 16} In his second assignment of error, Husband maintains that the trial court erred by ordering him to secure his spousal support obligations with a life insurance policy. Husband agrees that the trial court could order him to obtain a life insurance policy to secure payment of the arrearage that accumulated through the course of these proceedings, but argues that the trial court abused its discretion by ordering him to secure his ongoing spousal support obligation.
 {¶ 17} This court has consistently held that a trial court errs in ordering an obligor to secure a spousal support obligation terminable upon death with life insurance. Schiesswohl v. Schiesswohl, 9th Dist. No. 21629, 2004-Ohio-1615, *Page 10 
at ¶ 5; Moore v. Moore (1997), 120 Ohio App.3d 488, 492; Sergi v.Sergi (July 31, 1996), 9th Dist. No. 17476, at *11. Because Husband's support obligation is terminable upon his death by operation of R.C.3105.18(B), we agree that the trial court abused its discretion in ordering him to secure that obligation with a life insurance policy and sustain his second assignment of error.
 {¶ 18} We do so with two significant limitations, however. The original spousal support award in this case, which has long since been litigated to finality, cannot now be modified by means of this appeal. Therefore, our resolution of this assignment of error is understood to relate solely to the trial court's order denying Husband's motion to modify. See, e.g., Moore, 120 Ohio App.3d at 492-93. In addition, the trial court ordered Husband to pay his arrearage in monthly installments of $500, also to be secured by a life insurance policy. Because this obligation reflects an amount due to Wife as a result of Husband's contempt rather than his ongoing spousal support obligation, the trial court did not abuse its discretion by ordering Husband to secure payment of the arrearage with a policy of life insurance.
{¶ l9} Husband's first assignment of error is overruled. His second assignment of error is overruled to the extent that it relates to his arrearage, but sustained to the extent that it relates to his ongoing spousal support obligation. The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for proceedings consistent with this opinion. *Page 11 
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
LYNN C. SLABY FOR THE COURT
MOORE, J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1