OPINION
{¶ 1} Plaintiff-appellant Frances Mandelbaum appeals from an order reducing her spousal support from $1,500 to $925 per month. Defendant-appellee Stanley *Page 2 
Mandelbaum cross-appeals from the award of spousal support.[1]
 {¶ 2} Frances contends that the trial court abused its discretion by failing to impute rental income for the purpose of modifying spousal support. Frances also contends that the trial court erred in failing to consider income that Stanley receives by sharing expense with his new spouse and by failing to consider income that Stanley deducted from his business revenue for the benefit of his new spouse.
 {¶ 3} Stanley contends that the trial court erred in making the spousal support reduction effective on March 6, 2006, rather than in May, 2005, when his motion to reduce support was filed.
 {¶ 4} We conclude that the trial court erred in failing to consider, as a threshold matter, whether the changes in the parties' circumstances were substantial and were not contemplated at the time of the prior order. Although the parties reserved jurisdiction in the decree to modify spousal support, R.C. 3105.18(E), also requires a substantial change of circumstances before a spousal support order may be modified.
 {¶ 5} Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 6} The final judgment and decree of divorce was filed in December, 2000. At the time, the Mandelbaums had been married for more than forty years. The decree contained the following provisions pertinent to spousal support: *Page 3 
 {¶ 7} "1. SPOUSAL SUPPORT. The Husband agrees to pay to the Wife, as and for spousal support, the sum of $18,000.00 per year, payable in monthly installments of $1,500.00 per month, beginning with August 1, 2000, to be discharged in equal amounts according to the pay schedule of the Obligor Husband. * * *
 {¶ 8} "Said spousal support shall be sooner terminated upon the Husband's death, the Wife's death or the Wife's remarriage and shall be subject to the ongoing and continuing jurisdiction of this Court.
 {¶ 9} "* * *
 {¶ 10} "The parties shall, by April 30th of each calendar year, exchange their respective personal income tax returns.
 {¶ 11} "Either party shall have the right to apply to this Court for the purposes of modifying the spousal support, due to a change in the financial circumstances of either party.
 {¶ 12} "It is the parties' intent that, for the purposes of spousal support, the parties' combined incomes be equalized between the two of them. The parties, in reaching an agreement as to the annual spousal support payment of $18,000.00 per year by Husband to the Wife, have used $60,900.00 of income for the Husband and $25,131 of income for the Wife."
 {¶ 13} In May, 2005, Stanley filed a motion to reduce support, claiming that his income had decreased from $60,900 to $17,675. The affidavit of financial disclosure filed with the motion listed his income from Carillon Realty Company as $17,675. Stanley added $15,309 in Social Security and pension income, and $111 of interest income for a total income of $33,095. He then deducted the $18,000 in alimony to arrive *Page 4 
at the figure listed in his motion (about $17,000).
 {¶ 14} Hearings on the motion were held on three different days before a magistrate. The magistrate filed a decision in March, 2006, rejecting the motion for a reduction, based on the evidence and the credibility of the witnesses. The magistrate imputed income to Stanley in the amount of $14,700 per year based on Stanley's decision to voluntarily decrease his gross income by selling a rental property. Based on Stanley's gross income of $84,405 and Francis's gross income of $40,239, the magistrate found that Stanley had failed to show a change in circumstances sufficient to reduce spousal support.
 {¶ 15} Stanley filed timely objections from the magistrate's decision. Without taking further evidence or conducting a hearing in which it could assess the credibility of the witnesses, the trial court found Stanley's income to be $61,876. The court concluded that there was insufficient evidence to support a finding that Stanley had sold the rental property in an effort to deprive Francis of spousal support. The court also used a net rental income figure for the properties Stanley retained and did not allow depreciation taken on the properties to be added back into Stanley's income. The court did not make any findings with regard to whether a substantial change in circumstances had occurred.
 II {¶ 16} For purposes of convenience, we will consider the assignments of error out of order and will also combine the Second and Third Assignments of Error. Frances's Second Assignment of Error is as follows: *Page 5 
 {¶ 17} "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONSIDERING THE BENEFITS THAT APPELLEE RECEIVES FROM SHARING LIVING EXPENSES WITH HIS NEW SPOUSE IN DETERMINING APPELLEE'S INCOME FOR THE PURPOSE OF MODIFYING SPOUSAL SUPPORT." {¶ 18} Frances's Third Assignment of Error is as follows:
 {¶ 19} "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONSIDERING THAT APPELLEE CONTRIBUTES TO THE FINANCIAL WELFARE OF HIS NEW SPOUSE AND BY DEDUCTING EXPENSES FROM HIS OWN REVENUE THAT RIGHTFULLY SHOULD BE BORN [SIC] BY HIS NEW SPOUSE IN DETERMINING APPELLEE'S INCOME FOR THE PURPOSE OF MODIFYING SPOUSAL SUPPORT."
 {¶ 20} Under these assignments of error, Frances contends that the trial court should have considered the income of Stanley's spouse, Carol, in modifying spousal support, given that Stanley benefitted from sharing living expenses with a new spouse. Frances further contends that income that Stanley could have received as the 100% owner of Carillon Realty, was improperly reduced by the expenses of maintaining a branch office and promoting Carol's career. In response, Stanley claims that the divorce decree limits the court to merely equalizing the parties' incomes and does not allow for consideration of the factors in R.C.3105.18 governing modification of spousal support.
 {¶ 21} We review spousal support decisions for abuse of discretion, which means that the trial court's decision must have been arbitrary, unconscionable, or unreasonable in order to merit reversal. Norbut v.Norbut, Greene App. No. 06-CA-112, 2007-Ohio-2966, at If 14. Decisions are unreasonable if they are not supported by a sound *Page 6 
reasoning process. AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.
 {¶ 22} Under R.C. 3105.18(E), trial courts are deprived of jurisdiction to modify spousal support unless two conditions are satisfied: (1) the divorce decree must authorize modification; and (2) the court must determine "that the circumstances of either party have changed." Under R.C. 3105.18(F), a change in circumstances "includes but is not limited to any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." We have traditionally held that the change must be substantial and must not have been contemplated at the time of the prior order. McHenry v.McHenry, Montgomery App. No. 20345, 2004-Ohio-4047, at]} 14, citingTremaine v. Tremaine (1996), 111 Ohio App.3d 703, 706, 676 N.E.2d 1249. Accord, Norbut, 2007-Ohio-2966, at]} 15; Reveal v. Reveal,154 Ohio App.3d 758, 761, 2003-Ohio-5335, 798 N.E.2d 1132, at ? 14; Conde v.Conde (Nov. 11, 2001), Montgomery App. No. 18858, 2001 WL 1468894, *2 and Phillips v. Phillips (Mar. 31, 2000), Darke App. No. 99-CA-1501,2000 WL 331799, *1.
 {¶ 23} The divorce decree in the case before us reserves jurisdiction to modify, leaving only the issue of whether a substantial change of circumstances has occurred that was not contemplated by the parties. The trial court's magistrate rejected the motion for modification, finding that Stanley had failed to prove a substantial change of circumstances. In particular, the magistrate arrived at an income figure of $84,405 for Stanley and $40,239 for Frances. Stanley's income included $14,700 that was imputed. In this regard, the magistrate was troubled by the fact that Stanley had sold an income-generating property and had voluntarily decreased his gross income while using the *Page 7 
proceeds to pay off about $80,000 in debt for a property purchased with his new wife. As a result, the magistrate imputed an additional $14,700 in income to Stanley annually. The magistrate did not find it inequitable to refuse to impute further income to Stanley based on the fact that Stanley's new wife had failed to remit commissions to Stanley's realty company, which paid for the expenses of a branch office.
 {¶ 24} In ruling on Stanley's objections, the trial court did not consider whether a substantial change of circumstances had occurred, but instead relied on the content of the divorce decree. The court commented that the decree was silent as to how the parties had arrived at the original income figures used to compute support and with regard to whether the parties intended the equalization of income to be ongoing. However, the decree had ordered the parties to exchange annual income information. Because the decree retained jurisdiction to modify spousal support, the trial court concluded that in the absence of language to the contrary, the parties intended equalization to be ongoing. While the trial court did not specifically state that this nullified the obligation to find a substantial change of circumstances, the court also did not discuss the point. Furthermore, based on its conclusion about "equalization," the trial court did not address the factors in R.C.3105.18 that normally govern the determination of the amount of spousal support that is reasonable and appropriate.
 {¶ 25} The trial court also concluded that there was insufficient evidence to support a finding that Stanley had sold the rental property to deprive his ex-wife of support. Therefore, after failing to impute income to Stanley and deducting business expenses for Stanley's rental properties, the court found $40,239 in income for Frances and $61,876 in income for Stanley. The court then decreased spousal support in the *Page 8 
amount of $500 per month.
 {¶ 26} In view of the standards we have historically applied, the issue becomes whether the trial court erred in failing to address the issue of a substantial change in circumstances. In Kingsolver v.Kingsolver, Summit App. No. 21773, 2004-Ohio-3844, the Ninth District Court of Appeals held that trial courts have jurisdiction to modify spousal support based on "any" change, rather than a substantial change in circumstances. Id. at ]} 22. The Ninth District, therefore, concluded that once any change in circumstances occurs, the trial court must only analyze whether spousal support is still appropriate, and if so, the amount that is reasonable. Id. at Tf 12, 23, and 24.
 {¶ 27} In reaching these conclusions, the Ninth District relied on 1986 amendments to R.C. 3105.18, and further amendments to the statute in 1991. According to the Ninth District, the 1986 amendments were the first time the legislature had specifically addressed the trial court's authority to modify existing alimony or spousal support orders. The statute, as amended, indicated that a trial court entering a divorce decree or dissolution or marriage: "`does not have jurisdiction to modify the amount or terms of alimony unless the court determines that the circumstances of either party have changed and unless * * * the decree or a separation agreement * * * contains a provision specifically authorizing the court to modify the amount or terms of alimony.'" Id. atTf 16, quoting from R.C. 3105.18(D).[2]
 {¶ 28} The Ninth District concluded that Ohio courts supplemented R.C. *Page 9 3105.18(D) with a judicial definition of "a change in circumstances" because the legislature had failed to define this phrase in the 1986 amendments. Id. at]} 17, citing Leighner v. Leighner (1986),33 Ohio App.3d 214, 215, 515 N.E.2d 625. In this regard, the Ninth District stated that:
 {¶ 29} "[T]he Tenth District Appellate court in Leighner defined a `change of circumstances' as something `substantial' and `not contemplated [by the parties] at the time of the prior order.' * * * After the court's decision in Leighner, however, the legislature once again amended R.C. 3105.18. In January 1991, not only did the legislature add language which allowed trial courts to modify both alimony and spousal support orders, but it also defined `change of circumstances.'" Id. (emphasis in original).
 {¶ 30} The added language referred to by the Ninth District is contained in R.C. 3105.18(F), which was enacted as part of Am. H. B. 514. H. B. 514 was approved in August, 1990, and the effective date of R.C. 3105.18(F) was in January, 1991. 143 Ohio Laws, Part III, 5426, 5457, and 55516-17. R.C. 3105.18(F) has remained the same since its effective date, and states that:
 {¶ 31} "For purposes of divisions (D) and (E) of this section, a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses."
 {¶ 32} The Ninth District concluded that the word "any" was unambiguous, and that the Ohio legislature did not intend the term to mean "substantial" or "drastic." 2004-Ohio-3844, at]} 21. The Ninth District recognized that this interpretation broadened a trial court's authority to modify support orders, but found this consistent with prior case *Page 10 
law giving trial courts broad discretion in determining whether spousal support should be awarded. Id. at ]} 22. Both the Fifth and Eleventh Appellate Districts have subsequently agreed with the Ninth District. See Buchal v. Buchal, Lake App. No. 2005-L-095, 2006-Ohio-3879, atTf 14, and Tsai v. Tien, 162 Ohio App.3d 89, 93, 2005-Ohio-3520,832 N.E.2d 809.
 {¶ 33} However, many other districts, including our own, continue to require a substantial change of circumstances that was not contemplated at the time of the prior order. See, e.g., Reveal,154 Ohio App.3d at 761 (Second District); Norbut, 2007-Ohio-2966, at If 15 (Second District); Trotter v. Trotter, Allen App. No. 1-2000-86, 2001-Ohio-2122,2001 WL 390066, *2 (Third District); White v. White (Mar. 3, 1998), Scioto App. No. 97 CA 2511, 1998 WL 101353, *4 (Fourth District);Ortmann v. Ortmann, Lucas App. No. L-01-1045, 2002-Ohio-3665,2002 WL 445049, *5 (Sixth District); Reeves v. Reeves, Jefferson App. No. 06-JE-13, 2007-Ohio-4988, at ? 18 (Seventh District); Calabrese v.Calabrese, Cuyahoga App. No. 88520, 2007-Ohio-2760, at ]} 20 (Eighth District); Sweeney v. Sweeney, Franklin App. No. 06AP251,2006-Ohio-6983, at ? 21 (Tenth District); and Camahan v. Camahan (1997),118 Ohio App.3d 393, 397, 692 N.E.2d 1086 (Twelfth District).
 {¶ 34} In Heckman v. Heckman, Clark App. No. 2004-CA-62.2005-Ohio-6141, we rejected a position similar to the one advanced byKingsolver In this regard, we stated that:
 {¶ 35} "Finally, we address Ms. Heckman's contention that the trial court erred by determining that a substantial change in circumstances, as opposed to any change at all, is required for a modification of spousal support. We agree with her claim that neither *Page 11 
the decree nor R.C. 3105.18 uses the word `substantial' when discussing a modification of spousal support. However, this court has interpreted the statute as requiring a substantial change before a modification can be had. See, Tremaine, supra. Therefore, we find no error on the part of the trial court in requiring a substantial change in circumstances as a predicate for a modification of spousal support. A contrary holding would subject trial courts to innumerable motions to modify support orders upon the slightest change in the parties' circumstances." Id. at]} 22, citing Tremaine v. Tremaine (1996), 111 Ohio App.3d 703,676 N.E.2d 1249.
 {¶ 36} We still agree with this view. Further, we disagree withKingsolver, which was not discussed in Heckman. As a preliminary point of disagreement, we note that requiring a "substantial" change in circumstances was not a judicial response to the 1986 amendments to R.C.3105.18. A "substantial" or "material" change of circumstances was the standard used for more than one hundred years prior to 1986 as a requirement for modification of alimony. See Olney v. Watts (1885),43 Ohio St. 499, 3 N.E. 354. In Olney, the trial court had dismissed a husband's request to enjoin further alimony payments based on his ex-wife's remarriage. The Ohio Supreme Court reversed the trial court and allowed the request for an injunction to proceed, commenting that:
 {¶ 37} "The real contention touches the right and duty of the court in a case like this to review, modify, or vacate a former decree granting alimony payable in installments, by an original suit or proceeding instituted for that purpose, when such power had not been reserved by the language and form of the former decree. It has been determined by this court that a decree for alimony is not necessarily affected by *Page 12 
the subsequent marriage of the wife, although such a marriage may, in some cases, have the effect of reducing the amount. * * *
 {¶ 38} "`By the general doctrine, and as practiced in the country whence our laws are derived, aside, it seems, from all considerations of the form of the decree, the court may, from time to time, on any change in the circumstances of the parties, increase or reduce the sum allotted for alimony temporarily or permanently.' * * *
 {¶ 39} "In this issue, as in all others, what is once adjudged is not to be retried. Yet, as the allowance is a continuous support for the wife, changed facts may require an altered decree. As observed by Dr. Lushington, `where there is a material alteration of circumstances, achange in the rate of alimony may be made.'" 43 Ohio St. at 507-08
(citations omitted) (emphasis added).
 {¶ 40} Notably, the Ohio Supreme Court referred in Olney to "any change in circumstances" as a generic description of events that could potentially cause a reduction or increase in alimony. However, the condition required for modification was whether a "material alteration" of circumstances had occurred. The reason for requiring a material alteration of circumstances was concern over finality of decrees and a recognition that decrees should not lightly be set aside.
 {¶ 41} Subsequently, the Ohio Supreme Court held in Law v. Law (1901),64 Ohio St. 369, 375-76, 60 N.E. 560, that alimony is not subject to modification where it is fixed by court pursuant to an agreement of the parties, in the absence of fraud or mistake. Olney was distinguished because it did not involve such an agreement. Id. Thus, the general rule followed by Ohio courts was that:
 {¶ 42} "Where the terms of an agreement between the parties have been *Page 13 
approved by the trial court, and have been embodied by reference in the decree, such decree is not subject to modification upon petition by one of the parties in the absence of fraud or mistake, and in the absence of a reservation by the trial court of jurisdiction with reference to the agreed terms of alimony." Taylor v. Taylor (Dec. 18, 1975), Franklin App. No. 75AP-369, 1975 WL 182031, *4 (citations omitted)
 {¶ 43} Where an agreement did not exist, but the alimony was ordered by decree, the general law applied was that:
 {¶ 44} "[E]ven in the absence of a specific provision in the decree retaining jurisdiction, the trial court may exercise its equity jurisdiction and modify the decree as it would relate to periodic alimony payments upon proof of changed circumstances of the parties."1975 WL 182031, *6 (citations omitted).
 {¶ 45} In the latter event, the change in circumstances "must bematerial and not purposely brought about by the complaining party, they must be considered on the basis that the judgment sought to be modified was proper when made, and they must be of such nature or character that they could not have been reasonably anticipated and taken account of at the time of the original trial or hearing.
 {¶ 46} "A change in the financial condition of either the ex-husband or the ex-wife may justify modification of the alimony award, if thechange is material or substantial, and the alleged change was not one which the trial court expected and probably made allowances for when entering the original decree." Id. (Emphasis added; citations omitted).
 {¶ 47} Thus, after 1885, and well before the amendment of R.C. 3105.18
in 1986, Ohio courts adhered to the concept of finality of decrees and the requirement of a *Page 14 
material or substantial change in circumstances before modifying an alimony or spousal support decree. The refusal to allow modification in situations involving agreement of the parties was recognized as harsh, but courts considered themselves bound to apply the rule in the absence of action by the Ohio Supreme Court or the General Assembly. Miller v.Miller (C.P. 1958), 153 N.E.2d 355, 358-359.
 {¶ 48} In 1976, the Ohio Supreme Court issued a decision involving a request to terminate alimony payments where the parties' separation agreement did not reserve jurisdiction to modify the agreement.Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, 350 N.E.2d 413, "Prior toWolfe, a separation agreement entered into by the parties to a divorce was treated as a contract. A separation agreement which was incorporated into the divorce decree was not subject to modification by the court in the absence of mistake, misrepresentation, or fraud, and in the absence of a reservation of jurisdiction with reference thereto." Riedinger v.Riedinger (Apr. 29, 1982), Franklin App. Nos. 81AP-137 and 81AP-196,1982 WL 4142, *4. {¶ 49} In Wolfe, the Ohio Supreme Court discussed the historical origins of alimony and concluded that "most awards of property incident to a final divorce are readjustments of the party's property rights, and `* * * whether in the judgment such adjustment is called "alimony" or "division of property" * * * (has not been considered) important.'" 46 Ohio St.2d at 411 (parenthetical material in original). The Ohio Supreme Court also stated that the power to award alimony had always been derived from the statutory law, which in its present form sets out an eleven-factor guide for deciding first if alimony was "necessary" and second, the "`nature, amount, and manner of payments of the sum allowed as `alimony.'" Id. at 414. In this regard, the *Page 15 
Ohio Supreme Court observed that many of the statutory factors had little relevance to possible need for sustenance, but were instead pertinent to property settlement. Id.
 {¶ 50} After extensively considering the issue of jurisdiction to modify, the Ohio Supreme Court concluded in Wolfe that prior cases in Ohio had alluded to the "inviolability of an alimony decree which is formulated by the incorporation of an agreement of the parties." Id. at 416. However, the court reviewed an annotation on modification of alimony decrees, and noted that many courts allowed modification of periodic payments for alimony even though based on agreement, under one of the following three rationales: (1) public policy; (2) the theory that incorporated agreements are advisory, rather than binding on courts; and (3) the concept that agreements lose their contractual nature once they are adopted by a court and are merged into the decree. Id. at 416, citing Annotation (1975), 61 A.L.R. 3d 520, 551-52.
 {¶ 51} The Ohio Supreme Court acknowledged that settlements of property rights are not modifiable, but observed that it had previously adopted the view that obligations of child support and alimony are imposed not by contract but by decree, where an agreement is incorporated in a decree. Therefore, the court adopted the merger doctrine for alimony modification proceedings and held that a decree would not be subject to modification if the alimony award "is not solely for support but is in settlement of property rights." Id. at 418. The court then noted that:
 {¶ 52} "It is self-evident that a separation agreement, which purports to set a fair level of alimony for sustenance, as well as divide and distribute the property of the parties and settle their affairs, is not necessarily continually fair and equitable thereafter. We may assume that it is fair at the moment of its execution, and that it continues to be *Page 16 
fair at the time of divorce if the parties offer it for inclusion and merger into the decree. At that point, all that can be said is that it sets a fair and equitable `initial level' of obligations.* * *
 {¶ 53} "Such initially fair agreements may be rendered manifestly oppressive in countless situations, such as where the custodian of the children fails to provide proper care and guidance, or where the receiver of alimony makes no attempt at self-support * * * or where the economic situation of either or both of the parties drastically changes. The holding in this case, that a court has continuing modification jurisdiction over alimony for sustenance awards, is to assure that such awards are continually just." Id. at 418 (footnotes omitted).
 {¶ 54} Accordingly, Wolfe allowed courts to modify alimony, even though the parties had reached agreement, and had also failed to provide for a reservation of jurisdiction in their agreement. AfterWolfe was decided, trial courts continued to require a substantial or material change of circumstances before permitting modification of alimony.[3] However, while the substantial circumstances requirement remained unchanged, Wolfe's adoption of implied reservation of continuing jurisdiction was the *Page 17 
subject of debate.
 {¶ 55} In 1984, the Ohio Supreme Court limited Wolfe to divorce actions, holding that trial courts do not retain continued jurisdiction to modify periodic alimony payments in dissolution actions. McClain v.McClain (1984), 15 Ohio St.3d 289, 473 N.E.2d 811, syllabus. The decision in McClain was based on the consensual nature of separation agreements that are incorporated into dissolution decrees and the legislature's removal of alimony in 1975 from the matters over which trial courts retain jurisdiction under R.C. 3105.65(B), governing dissolution actions. Id. at 290-91. The dissent in McClain argued thatWolfe's continuing modification jurisdiction was synonymous with the trial court's inherent equitable jurisdiction. Id. at 291 (Ford, dissenting).
 {¶ 56} In 1984, the Ohio Supreme Court also held that where the parties have agreed to, and the trial court has decreed, sustenance alimony for an ascertainable amount over an ascertainable term of years, the award is not subject to modification absent an express reservation of jurisdiction. Colizoli v. Colizoli (1984), 15 Ohio St.3d 333, 336,474 N.E.2d 280. The Ohio Supreme court stated that this decision was not a retreat from Wolfe, which continued to control when the amount and/or duration of alimony was indefinite. The court stressed that "where a decree incorporates an agreement of the parties which specifically delineates the amount and duration of sustenance alimony, * * * such a decree should be accorded its proper degree of finality." Id at 336.
 {¶ 57} Subsequently, in 1985, the Ohio Supreme Court again distinguished Wolfe, in a case involving a divorce decree, rather than a separation agreement. This time, the Ohio Supreme Court stated that the trial court lacks jurisdiction to modify *Page 18 
sustenance alimony awarded for a fixed period of years, even though the decree is subject to termination in the event of remarriage, death, or cohabitation. Ressler v. Ressler ( 1985), 17 Ohio St.3d 17,476 N.E.2d 1032, syllabus. The Ohio Supreme Court observed that it was "promoting the concept that alimony decrees should possess a degree of finality and certainty," and that divorce decrees "determined by court order deserve the same finality as those ordered pursuant to an agreement." Id. at 18-19. Justice Celebreeze, in his dissent, reasoned that the decree in question was insufficiently distinguishable from the decree inWolfe. Justice Ford agreed, commenting that the court's "re-examination of its principles * * * appears to be the creation of an amorphous trial that is difficult to follow." Id. at 21 (Ford, dissenting).
 {¶ 58} These problems were addressed when R.C. 3105.18 was amended by Am. H. B. 358, effective May 2, 1986. See 141 Ohio Laws, Part II, 3388. The Senate Judiciary Committee Report for H. B. 358 noted that existing law did not specifically authorize alimony awards in actions other than alimony proceedings. Despite this fact, courts had judicially recognized continuing jurisdiction to modify periodic monetary payments in divorce cases, even where alimony had been awarded pursuant to a settlement agreement incorporated into a divorce decree. In contrast, trial courts did not view themselves as having continuing jurisdiction to modify alimony that had been agreed to and incorporated into dissolution decrees. Am. H.B. 358, as reported by S. Judiciary, pp. 1-2, Ohio Legislative Service Comm. 1985-1986, LSC Box 34. During its discussion of these points, the Judiciary Committee Report referred specifically to both Wolfe and McClain. In addition, the Judiciary Committee Report noted that:
 {¶ 59} "According to testimony before the House Civil and Commercial Law *Page 19 
Committee, some Ohio courts will not modify alimony agreed to in a separation agreement involved in a dissolution of marriage case evenif the parties expressly have provided in the agreement that the alimony is modifiable by a court. The courts have concluded that the Revised Code does not grant them continuing jurisdiction over alimony in such a case and that only the General Assembly, not the parties to a proceeding, can confer jurisdiction on the courts." Id. at 2-3 (emphasis in original).
 {¶ 60} H.B. 358 proposed changes that would govern modification of orders in both divorce and dissolution actions. Consistent with the fact that only the legislature can confer jurisdiction, new subsection (D) was added to R.C. 3105.18, and stated that:
 {¶ 61} "If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after the effective date of this amendment, the court that enters the decree of divorce or dissolution does not have jurisdiction to modify the amount or terms of the alimony unless the court determines that the circumstances of either party have changed and unless one of the following applies:
 {¶ 62} "(1) in the case of a divorce, the decree or separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony;
 {¶ 63} "(2) in the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony." 141 Ohio Laws, Part II, 3388, 3389.
 {¶ 64} As a jurisdictional matter, the amended statute required both a change of *Page 20 
circumstances and a reservation of jurisdiction. This was a change in the law as established in Wolfe, since implied reservation of jurisdiction would no longer be allowed. In discussing existing law, the Judiciary Committee Report also stated that "changed circumstances commonly is [sic] the basis for such a modification." Am. H.B. 358, as reported by S. Judiciary, at 1. By referring to the common basis for modification, the legislature clearly indicated an awareness of the existing requirements being applied by courts.
 {¶ 65} After the 1986 amendments to R.C. 3105.18, Ohio courts continued to routinely apply a substantial change in circumstances as a threshold requirement for modification of alimony. As we mentioned,Kingsolver cites the 1986 Tenth District Court of Appeals decision inLeighner as supplementing the 1986 amendments to R.C. 3105.18 with a judicial definition of "changed circumstances." 2004-Ohio-3844, at ¶ 17.
In our view, Leighner simply applied well-established law that:
 {¶ 66} "Where modification of an existing order for the payment of sustenance alimony is requested, the threshold determination is whether the order can be modified, which requires a finding of a change in circumstances since the order was entered. The change in circumstances must be substantial and must be such as was not contemplated at the time of the prior order. Only if the necessary prerequisite has been satisfied may the trial court move on to a consideration of whether the order should be modified." Leighner (1986), 33 Ohio App.3d 214, 215, citing Bingham (1983), 9 Ohio App.3d 191, 459 N.E.2d 231.
 {¶ 67} As is evident, the case cited by Leighner (Bingham) was issued well before the 1986 enactment of R.C. 3105.18(D). Consequently, the "substantial" change of *Page 21 
circumstances requirement was not adopted as a result of the lack of definition in the statute.
 {¶ 68} Furthermore, the Tenth District would not have been in a position to adopt a judicial definition in response to the alleged lack of definition of "changed circumstances" in R.C. 3105.18(D), since R.C.3105.18(D) specifically provided that it would apply only to continuing orders for periodic alimony entered on or after the effective date of the amendments, which was May 2, 1986.
 {¶ 69} The Tenth District decision in Leighner was issued in June, 1986, which was only about two months after the amendments. The original order for periodic alimony in Leighner was also entered two years before the request for modification was filed. 33 Ohio App.3d at 215. Therefore, the pertinent events occurred well before the 1986 amendments, and R.C. 3105.18(D) did not even apply to the case. Consequently, the Tenth District would have had no reason to "supplement" the lack of definition in the amended statute.
 {¶ 70} In 1991, a number of changes to the domestic relations laws became effective, including the addition of subsection (F) to R.C.3105.18. See 143 Ohio Laws, Part III, 5426-5457. As we noted, the Ninth District concluded in Kingsolver that subsection (F) was enacted for the purpose of giving trial courts broad jurisdiction, and to eliminate the requirement of a substantial change of circumstances.Kingsolver, 2004-Ohio-3844, at ]} 21.
 {¶ 71} We see no indication that this was the General Assembly's intent. In contrast to the debate over implied reservation of jurisdiction, courts had routinely required a substantial change of circumstances in cases where the 1986 amendments *Page 22 
applied, without any indication of a dispute over interpretation of the amended statute. See, e.g., Sony v. Sony (August 2, 1990), Franklin App. No. 1367, 1990 WL 110268, *3 (original decree was filed in 1988, reserving jurisdiction to modify; appellate court required "substantial change" of circumstances in 1990); Turella v. Turella (Nov. 21, 1990), Cuyahoga App. No. 57724, 1990 WL 180646, *2 (original decree was filed in October, 1986; court required "substantial change" of circumstances in 1990); and Coder v. Coder (June 13, 1990), Montgomery App. No. 11738,1990 WL 80564, *3 (original decree was filed in October, 1987; court applied substantial change of circumstance in 1990).
 {¶ 72} Legislative history also fails to reveal any concern over jurisdictional issues in the alimony context. For example, in March, 1986, the 116th General Assembly created a 15 member Domestic Relations Task Force for the purpose of conducting a comprehensive review of Ohio's domestic relations law. The Task Force held eleven public hearings in locations representing every region of the state. See The Domestic Relations Task Force Final Report Submitted to the Ohio General Assembly pursuant to Sub. S. JR 12 of the 116th General Assembly, p. 1. Following these public hearings, the Task Force Report was submitted to the General Assembly in June, 1987.
 {¶ 73} The Report noted that public testimony did not focus on the issue of alimony. Id. at 10. However, the Report did contain some general comments on alimony. For example, the Report discussed alimony support payments and nationwide statistics on the number of women being granted alimony, which had declined to some extent between 1980 and 1984. After discussing the current state of the law on alimony, the Report recommended that R.C. 3105,18(A) be amended to allow alimony out of the *Page 23 
marital estate as the court deemed reasonable to either party. The report concluded that this change would clarify what judges could consider as alimony. It would "exempt separate property from distribution and require alimony to be allowed only from marital property or as maintenance payments." Id. at 14. However, the Task Force Report did not mention either R.C. 3105.18(D) or the existing standards for modifying alimony.
 {¶ 74} Recommendations were made on a wide variety of other subjects, including resolving disputed custody and visitation issues in mediation; penalizing false reports of abuse during domestic relations cases; adoption of shared parenting laws; adoption of factors to be considered in forming visitation orders; adoption of child support guidelines; performance standards for domestic relations courts; and changes in domestic violence laws.
 {¶ 75} Subsequently, in July, 1990, the 118th General Assembly enacted H. B. 514, which replaced actions for alimony only with actions for legal separation, established procedures for distributing separate property and marital property in actions for divorce or legal separation (new R.C. 3105.171); replaced "alimony" payments with "spousal support,"
 {¶ 76} and eliminated some existing factors used to determine the type and amount of spousal support. Some new factors to be used in the spousal support determination were also added. See 143 Ohio Laws, Part III, 5426-5457. See also, Sub. H.B. 514, as reported by S. Judiciary, p. 1., Ohio Legislative Service Comm. 1989-1990, LSC Box 43. And, of course, H.B. 514 also added R.C. 3105.18(F). Id.
 {¶ 77} In discussing the existing law on spousal support, the Judiciary Committee Report for H. B. 514 indicated that currently, reasonable alimony could be awarded, and *Page 24 
courts were required to consider all relevant factors in determining whether alimony was necessary. Id. at 6. This part of the Judiciary Committee Report did not mention existing law on modification of alimony.
 {¶ 78} In describing the operation of the proposed bill, the Judiciary Committee Report noted that courts would be able to award spousal support, but only after determining disbursement of property under the bill. Id. at 7. With respect to modification, the Judiciary Committee Report stated only that:
 {¶ 79} "For the purposes of modifying a prior order for periodic payments of money as spousal support in a divorce or dissolution action, or in an action for legal separation, a change in circumstances of a party (which is necessary for modification) would include, but not be limited to any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." Id.
 {¶ 80} Finally, the Judiciary Committee Report observed that the bill would eliminate existing specific requirements for determining the type and amount of alimony, such as property brought to the marriage by either party and contributions of a homemaker. Other factors were also being added, such as income of the parties from all sources, including income from property "distributed" under the martial property and separate property division; mental conditions of the parties; and contributions of each party to the education of the other. Id. at 8.
 {¶ 81} In contrast to the specific discussion of elements that were being eliminated and changed in R.C. 3105.18(C), there were no similar remarks or comment on changes being made by R.C. 3105.18(F). The amendments to R.C. 3105.18 took effect in January, 1991, and Ohio courts continued for well over a decade to uniformly *Page 25 
apply the requirement of a substantial change of circumstances, until the Kingsolver decision in 2004.
 {¶ 82} In view of the well-established nature of the existing law since 1885, and the legislature's failure to even mention what would have been a significant change, we do not share Kingsolver's view of the 1991 amendments. If these amendments were intended to disrupt law that had been established for many years, and had intended to confer jurisdiction on trial courts for "any" change in circumstances, regardless of the magnitude of the change, the General Assembly would likely have said so. Furthermore, as a matter of public policy, the General Assembly would not have intended to confer unrestricted ability on litigants to continually re-open judgments to re-litigate support issues, particularly since it had restricted jurisdiction in 1986. And, as we mentioned before, there is no indication that any significant events, including conflicting case interpretations or struggle applying the law, had occurred between 1986 and 1990, when the statute was again amended.
 {¶ 83} We also do not find the language used by the General Assembly to be free from ambiguity. In assessing changes of circumstances prior to the 1991 amendments, many courts had focused their attention on the factors specifically listed in R.C. 3105.18. For example, in Conners v.Conners (Sept. 27, 1979), 79 AP-284, 1979 WL 209359, *3, the court rejected a request for termination of alimony payments because there had been no "substantial change of circumstances in any of the factors provided by R.C. 3105.18." Among the facts, raised, however, was a $5,000 increase in the ex-wife's salary since the time of the original decree. Id.
 {¶ 84} Rather than focusing on the increase in salary, the court stressed that the *Page 26 
ex-wife's earning ability had not increased since the divorce, because she had not received more training, nor did she work for a different employer so that she could substantially increase her salary. Id. See also, e.g., Moore v. Moore (June 19, 1979), Franklin App. No. 78AP-755,1979 WL 209130, *3 (finding that no substantial change had occurred because the plaintiffs earning ability had not changed, "nor have any of the other factors in 3105.18(B)").
 {¶ 85} This does not mean that Ohio courts never considered increases in income. For example, the court in Bingham observed that it was inconceivable that a substantial change of circumstances had not occurred in the eight years since the original decree was entered, "if only in view" of the fact that the support recipient's earnings had more than tripled. 9 Ohio App.3d 191, 193.
 {¶ 86} Courts also considered changes in living expenses, even though that was not an item listed in R.C. 3105.18. See Tisdale v. Tisdale
(Dec. 5, 1986), Hocking App. No. 436, 1986 WL 13656, *3 (holding that the trial court did not err in finding a substantial change of circumstances based on the ex-wife's satisfaction of her mortgage with post-decree accident proceeds. This decreased the ex-wife's living expenses and she received voluntary contributions as well from a friend with whom she shared her home).
 {¶ 87} Nonetheless, prior to 1991, wages, salaries, bonuses, medical expenses, and living expenses were not among the items specifically listed in R.C. 3105.18. Since these items were not listed, the legislature could simply have intended to provide further guidance to courts as to matters that are appropriately included in determining whether a change in circumstances has occurred. Olney, 43 Ohio St. 499,508. *Page 27 
 {¶ 88} The legislature could also have used "any" as an all-inclusive term designating all items within a particular category. For example, "living expenses" and "medical expenses" are broad categories. The use of the word "any" eliminates arguments about whether a specific type of expense within these categories could be considered in deciding if a change of circumstances has occurred. We find these interpretations more logically consistent with the history and purpose of alimony and spousal support modification than Kingsolver's conclusion that "any" change of circumstances confers jurisdiction on courts to modify its prior orders.
 {¶ 89} Furthermore, some of the factors listed in R.C. 3105.18(B) before the 1991 amendments, like the parties'"relative assets and liabilities," "expectancies and inheritances," and "property brought to the marriage," were more relevant to decisions on property division than to support and maintenance.[4] See Stevens v. Stevens (1986),23 Ohio St.3d 115, 123, 492 N.E.2d 131 (Wright, concurring). Stevens involved the issue of whether a spouse's contribution to her husband's professional degree should be considered martial property subject to division or as an element in reaching an equitable award of alimony. The Ohio Supreme Court adopted the latter position, deferring to the legislature for any changes in the domestic relations law on treatment of a professional degree upon divorce. Id. at 120, n. 5.
 {¶ 90} In a concurring opinion, Justice Wright commented on the fact that R.C. 3105.18 listed factors more appropriate to property division, and on the fact that the lack of clarity in the current "hybrid" statute made it difficult to interpret legislative intent. Id. *Page 28 
at 123. The 1991 amendments to R.C. 3105.18 appear to address these concerns by adding factors for contributions of a spouse to the education and training of the other spouse; by eliminating certain factors relating to "property division," like "expectancies and inheritances" and "property brought to the marriage;" and by adding R.C.3105.18(F), which included matters more pertinent to maintenance, like wages, salary, living expenses, and medical expenses, under the category of a change of circumstances. 143 Ohio Laws, Part III, at 5456-57. Again, increases or involuntary decreases in wages and expenses are pertinent to the issue of spousal support, and were considered by courts prior to 1991. However, they were not specifically included as part of the equation before the 1991 amendments.
 {¶ 91} Accordingly, we conclude that when R.C. 3105.18(F) became effective in 1991, the General Assembly did not intend to change the well-settled requirement that before modification of a spousal support order can be permitted, the change in circumstances must be substantial and must not have been contemplated at the time of the prior order.McHenry, 2004-Ohio-4047, at]} 14, citing Tremaine v. Tremaine (1996),111 Ohio App.3d 703, 706, 676 N.E.2d 1249. As we noted inHeckman, to reach any other result would open the courts to a deluge of requests for modification, no matter how trivial. 2005-Ohio-6141, at]} 22.
 {¶ 92} Kingsolver discounted this concern based on existing guidelines governing frivolous pleadings and its belief that the use of the word "any" could not reasonably be contemplated to mean a nominal change.2004-Ohio-3844, at ? 23, n. 4. However, this position contradictsKingsolver's unqualified interpretation of the word "any" as meaning "`unmeasured or unlimited in amount, quantity, number, time or extent.'" Id. at ? 21. *Page 29 
 {¶ 93} Furthermore, guidelines on frivolous pleadings indicate that a pleading will be considered frivolous if it is "not warranted under existing law." R.C. 2323.51 (A)(2)(ii). If the word "any" means "unlimited in amount," one would be hard-pressed to argue that a pleading raising even a nominal change in circumstances is not warranted under existing law. Notably, this does not even take into consideration the difficulty in deciding what changes are more than nominal or are of sufficient magnitude to avoid sanctions for frivolous conduct, and the amount of litigation that could be spawned from parties contesting these matters.
 {¶ 94} In the present case, the trial court's failure to apply the correct legal standard was an abuse of discretion, since decisions are unreasonable if they are not supported by a sound reasoning process.AAAA Enterprises, Inc. (1990), 50 Ohio St.3d 157, 161. Regardless of the terms of the divorce decree (which in this case was based on an agreement read into the record in open court), the parties could not agree to confer jurisdiction on the court. Subject-matter jurisdiction "is always fixed and determined by law and cannot be conferred on the court by any consent or acquiescence of the parties." Polak v.Polak (Dec. 12, 1986), Montgomery App. No. 9993, 1986 WL 14245, *3. The parties could agree to reserve jurisdiction in the decree, but R.C.3105.18(E) sets forth an additional prerequisite for jurisdiction that must be met.
 {¶ 95} Accordingly, the order of modification in this case must be reversed, and this cause must be remanded so that the trial court can consider whether a substantial change of circumstances has occurred that was not contemplated by the parties at the time of the original decree. If this threshold inquiry is satisfied, the court may then *Page 30 
determine whether the existing order should be modified and what amount of support is reasonable and appropriate.[5]
 {¶ 96} Based on the preceding discussion, the Second and Third Assignments of Error are sustained.
 III {¶ 97} Frances's First Assignment of Error is as follows:
 {¶ 98} "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT INCLUDING OR NOT IMPUTING RENTS FROM THE BENCHWOOD RENTAL IN DETERMINING APPELLEE'S INCOME FOR THE PURPOSE OF MODIFYING SPOUSAL SUPPORT."
 {¶ 99} Under this assignment of error, Frances contends that the trial court abused its discretion by failing to include certain income for purposes of modifying *Page 31 
spousal support. A property that Stanley owned on Benchwood Drive generated $14,700 in yearly rental income, without deducting items like property taxes and insurance, but was sold during the pendency of the trial court proceedings. As we mentioned above, the magistrate imputed income to Stanley in the amount of $14,700 per year based on Stanley's decision to voluntarily decrease his gross income by selling a rental property. In ruling on Stanley's objections, the court excluded the rental income because it found insufficient evidence that Stanley sold the property in an effort to deprive Frances of support.
 {¶ 100} Frances contends that the trial court improperly allowed Stanley to benefit from voluntary acts that reduced his income for spousal support purposes and also eliminated marital debt. The voluntary acts were Stanley's sale of the Benchwood property and his subsequent use of sale funds to pay off mortgages on personal and marital property. Stanley contends, however, that the Benchwood property was purchased with inherited funds and that he did not have to use his inheritance to produce income.
 {¶ 101} In view of our disposition of the First and Second Assignments of Error, this assignment of error is moot. If the trial court reaches this issue on remand, we note for the court's guidance that "changes in income within the context of a spousal support modification must be involuntary and not brought on by the payor." Addington v.Addington, Scioto App. No. 05CA3034, 2006-Ohio-4871, at ]} 9. See also,Melhorn v. Melhorn (Jan. 30, 1989), Montgomery App. No. 11139,1989 WL 8452, *1.
 {¶ 102} We also note that the magistrate's decision, including the choice of imputing income, was premised on credibility. We have previously stressed that a *Page 32 
magistrate is "a subordinate officer of the trial court, not an independent officer performing a separate function." Wingard v.Wingard, Greene App. No. 2005-CA-09, 2005-Ohio-7066, at ? 17. As a result, the trial court does not assume the position of an appellate court in reviewing the magistrate's work. Id. Therefore, a de novo
standard of review, not an abuse of discretion standard applies, and the trial court should not adopt the magistrate's factual findings unless it agrees with them. Crosby v. McWilliams, Montgomery App. No. 19856,2003-Ohio-6063, at]}33-34.
 {¶ 103} Nevertheless, where a magistrate comments on credibility and the trial court does not take additional evidence as is authorized under Civ. R. 53(D)(4)(b), "the judgment of the magistrate on issues of credibility is, absent other evidence, the last word on the issue for all practical purposes." Quick v. Kwiatkowski, Montgomery App. No. 18620, 2001-Ohio-1498, 2001 WL 871406, *4. See also, MacConnell v.Nellis, Montgomery App. No. 19924, 2004-Ohio-170, at ? 16, n. 1 (indicating that a trial court does not improperly defer to the magistrate where it gives "some deference to the magistrate's credibility determinations," but also independently considers the evidence before it).
 {¶ 104} In view of the disposition of the Second and Third Assignments of Error, the First Assignment of Error is moot.
 IV {¶ 105} Stanley's Cross-Assignment of Error is as follows:
 {¶ 106} "THE TRIAL COURT ABUSED ITS DISCRETION BY MAKING THE REDUCTION IN SPOUSAL SUPPORT EFFECTIVE MARCH 6, 2006." *Page 33 
 {¶ 107} Under this assignment of error, Stanley contends that the trial court erred in its choice of the effective date of the reduction in spousal support. The trial court reduced support as of the date of the hearing before the magistrate, rather than the date on which Stanley served Frances with the motion to reduce support.
 {¶ 108} Because this matter is being remanded, the cross-assignment of error is moot. We do note that such decisions are subject to an abuse of discretion standard. See, e.g., Ridenour v. Ridenour, Delaware App. No. 04CAF12082, 2005-Ohio-3922, at If 18.
 {¶ 109} Accordingly, the Cross-Assignment of Error is moot.
 IV {¶ 110} Frances's Second and Third Assignments of Error having been sustained, and the First Assignment of Error and Stanley's Cross-Assignment of Error having been overruled as moot, the order of the trial court modifying spousal support is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)
DONOVAN and WALTERS, JJ., concur.
[1] The parties will be referred to in this opinion as Frances and Stanley.
[2] This section is currently codified as R.C. 3105.18(E).
[3] See, e.g., Bertsche v. Bertsche (Dec. 12, 1976), Warren App. No. 87, 1976 WL 190497, *1; Huffman v. Huffman (Aug. 8, 1978), Franklin App. No. 78AP-80, 1978 WL 217007, *3; Moore v. Moore (June 19, 1979), Franklin App. No. 78AP-755, 1979 WL 209130, *3; Mattoni v. Mattoni (Feb. 22, 1980), Lucas App. No. L-79-129, 1980 WL 351170, *3; Learmonth v.Learmonth (Mar. 3, 1981), Franklin App. No. 80AP-537, 1981 WL 3030, *2;Davis v. Davis (Oct. 21, 1981), Clark App. No. 1568, 1981 WL 2576, *4;Forkapa v. Forkapa (June 26, 1981), Lucas App. No. L-8-305,1981 WL 5670, *2; Bauer v. Bauer (Apr. 15, 1982), Montgomery App. No. 7596,1982 WL 3719, *1; Riedinger v. Riedinger (Apr. 29, 1982), Franklin App. Nos. 81AP-137 and 81AP-196, 1982 WL 4142, *4; Blakemore v. Blakemore5 Ohio St.3d 217, 220, 450 N.E.2d 1140; and Bingham v. Bingham (1983),9 Ohio App.3d 191, 459 N.E.2d 231.
[4] R.C. 3105.18(B) was renumbered as R.C. 3105.18(C) in the 1991 amendments and retains that designation to date. See 143 Ohio Laws, Part III, 5426, 5456.
[5] In this regard, we note that the trial court concluded that the spousal support provisions in the decree are ambiguous. "`Agreements incorporated into divorce decrees are contracts and are subject to the rules of construction governing other contracts.'" Jackson v.Hendrickson, Montgomery App. No. 20866, 2005-Ohio-5231, at ]} 7. "Whenever a clause in a separation agreement is deemed to be ambiguous, it is the responsibility of the trial court to interpret it. The trial court has broad discretion in clarifying ambiguous language by considering not only the intent of the parties but the equitiesinvolved." In re Marriage of Seders (1987), 42 Ohio App.3d 155, 156,536 N.E.2d 1190 (emphasis added). In addition, "parol evidence is admissible to explain the parties' understanding at the time the agreement was made when contractual provisions are ambiguous and subject to different interpretations." Scartz v. Scartz (Apr. 25, 1989), Franklin App. Nos. 88AP-724, 88AP-728, 1989 WL 43255, *2. Neither the magistrate nor the trial court received any evidence as to the understanding of the parties at the time of their agreement, which could be helpful. We also note that an equitable concept in assessing spousal support, is the benefit an individual receives from sharing expenses with another. See Gallo v.Gallo, Lake App. No. 2004-L-193, 2006-Ohio-873, at ]} 34, and McNutt v.McNutt, Montgomery App. No. 20752, 2005-Ohio-3752, at If 15 (noting that " the ability to share expenses is relevant in deciding whether an obligor's claim of poverty is well-taken.") *Page 1